# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2110

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| David Cashius Rhone, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 15, 2011
Filed: August 2, 2011

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The district court[1] revoked David Rhone's term of supervised release after finding that he violated the following four conditions of his supervised release: (1) that he submit to drug testing; (2) that he not possess a firearm, ammunition, destructive device, or any other dangerous weapon; (3) that he not possess a controlled substance; and (4) that he not associate with persons engaged in criminal activity. The court sentenced him to 11 months' imprisonment, to be followed by 24 months of

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

supervised release. Rhone appeals, arguing that the government failed to prove the three most serious violations, and that the court did not purport to revoke his release based solely on a failure to comply with drug testing. We affirm.

I.

On October 4, 2006, Rhone pled guilty to transfer of an unregistered sawed-off rifle, in violation of 26 U.S.C. §§ 5861(e) and 5871, and possession of a firearm as an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The district court sentenced him to 37 months' imprisonment, to be followed by 36 months of supervised release. On January 2, 2009, Rhone was released from prison and began his term of supervised release.

On July 12, 13, and 25, 2009, Rhone failed to submit urine samples as required for drug testing. His probation officer warned him about missing the tests. On April 5, 2010, the Dubuque Police Department notified Rhone's probation officer of two rap videos, accessible on the Internet via www.youtube.com, in which Rhone appeared. In a video entitled, "guTTa Town Feat GuTTa Mann," Rhone appears with individuals who possess what appear to be firearms. Rhone also makes statements regarding firearms and possesses a baseball bat. The video shows white powder beside a scale and numerous one hundred dollar bills. At the end of the video, Rhone states "all you out there who think I changed up because I went to the Feds, I'm back, be scared." In another video, entitled "Dazzle Da Doe Boi-Blow Up," Rhone appears with an individual who possesses a firearm, and the video shows white powder on a scale and numerous one hundred dollar bills. It also appears that Rhone is "throwing gang signs" in the video.

On April 6, 2010, the United States Probation Office filed a petition with the district court to revoke Rhone's supervised release. The petition alleged that Rhone had violated the mandatory conditions of his supervised release that he "not possess

a firearm, ammunition, destructive device, or any other dangerous weapon" and "not unlawfully possess a controlled substance." It further asserted that he failed to comply with the special conditions that he "must participate in . . . a program of testing and treatment for substance abuse" and "not associate with any persons engaged in criminal activity."

The district court held evidentiary hearings at which the government introduced the two videos. A probation officer testified that the videos portrayed firearms and powder cocaine, but that she could not testify directly whether the objects were "fake" or "real." Rhone introduced two exhibits, a toy gun and a BB gun. Rhone and Stephen Harrison, the producer of the videos, both testified that these exhibits were the guns used in the video. Rhone and Harrison further stated that most of the scenes in the videos were recorded at Rhone's house. Harrison also testified that the white powder was actually baking soda, although it was designed to look like drugs in the video. Rhone admitted separately that he had failed to submit required urine samples on three occasions.

The district court found that the government established the four violations by a preponderance of the evidence, and that revocation was mandatory due to Rhone's possession of firearms and controlled substances. The court imposed a sentence of 11 months' imprisonment, to be followed by a 90-day placement at a re-entry center and 24 months of supervised release.[2]

---

[2]The government suggests that the appeal is moot because Rhone was released from prison on January 5, 2011. But because Rhone's original term of supervised release was to expire in January 2012, and the new term imposed after revocation will not end until January 2013, the revocation has continuing consequences, and the appeal is not moot. *See Mabry v. Johnson*, 467 U.S. 504, 507 n.3 (1984).

II.

Under 18 U.S.C. § 3583, a district court must revoke a defendant's supervised release if the defendant "possesses a controlled substance," "possesses a firearm, as such term is defined in [18 U.S.C. § 921], in violation of Federal law," or "refuses to comply with drug testing imposed as a condition of supervised release." 18 U.S.C. § 3583(e)(3), (g). In this case, the district court determined that revocation was mandatory, because Rhone "possessed controlled substances and possessed a firearm." Tr. 122. The video recordings do not show Rhone in actual possession of a firearm, but we presume that the court found constructive possession. *See United States v. Abfalter*, 340 F.3d 646, 654 (8th Cir. 2003); *United States v. Blackston*, 940 F.2d 877, 883 (3d Cir. 1991). We review the district court's revocation decision for an abuse of discretion, and its "underlying factual findings as to whether a violation occurred for clear error." *Id.* (internal quotations omitted). When reviewing for clear error, "we reverse only if we have a definite and firm conviction that the district court was mistaken." *United States v. Farmer*, 567 F.3d 343, 346 (8th Cir. 2009) (internal quotations omitted).

Rhone asserts that the government failed to prove the three disputed violations, and that the record does not show that the district court would have revoked his release for failing to submit to drug testing on three occasions. *Cf. United States v. Stephens*, 65 F.3d 738, 741 (8th Cir. 1995). We conclude that the district court did not clearly err in finding that Rhone possessed a firearm, and because this finding mandates revocation, it is unnecessary to consider the other issues raised by Rhone.

Rhone does not dispute the district court's finding that he possessed objects portrayed as firearms. His contention is that the government presented insufficient evidence that the objects depicted in the video recordings were authentic firearms that met the definitional requirement of 18 U.S.C. § 921(a)(3). Although the government did not seize the objects depicted in the video recordings or present expert testimony

concerning the presence of firearms, such evidence was not necessary to support a finding that Rhone possessed a firearm. "[N]umerous courts have held that, without a firearm in evidence and without expert opinions based on analysis of the firearm, lay testimony from eyewitnesses can be sufficient to support a finding that an object is, in fact, a firearm under § 921(a)(3)(A)." *United States v. Dobbs*, 449 F.3d 904, 910-11 (8th Cir. 2006); *see United States v. Hunt*, 187 F.3d 1269, 1270-71 (11th Cir. 1999) (collecting cases).

Here, the court had evidence even better than lay testimony about possession of a purported firearm. The court was able to view the video recordings, to observe in court the toy gun and BB gun that Rhone and Harrison said were depicted in the videos, to consider the statements made by Rhone in the videos, and to evaluate the credibility of Rhone and Harrison. The video recordings provided ample opportunity for the court to view the objects portrayed as firearms. In one recording, while pointing to one such object, Rhone sang that he "got 2 Mac-11s in my duffle bag gear." Ex. 1, "GuTTa Town Feat GuTTa Mann," at 1:27. When Rhone and Harrison testified about the supposed use of a toy gun and BB gun in the videos, the court found them "totally incredible." This finding was amply supported. Both men had strong motive to deny the presence of firearms; Harrison refused to follow instructions to remain outside the courtroom while other witnesses testified; and Harrison took cues from audience members while testifying. False exculpatory testimony by Rhone and Harrison gave the court even more reason to believe that the video depicted actual firearms. *See United States v. Diaz-Carreon*, 915 F.2d 951, 955 (5th Cir. 1990) ("An implausible account of exculpatory events suggests that the defendant desires to obscure his criminal responsibility."); *United States v. Jimenez-Perez*, 869 F.2d 9, 11 (1st Cir. 1989) ("[I]f the jury disbelieved defendants' story, it could legitimately have presumed that the fabrication was all the more proof of their guilt.").

Considering the record as a whole, we conclude that the district court did not clearly err in finding, by a preponderance of the evidence, that objects depicted in the

videos were actual firearms, and that Rhone possessed them in violation of his conditions of supervised release. The judgment of the district court is affirmed.

_____