# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1425

_____

United States of America

*Plaintiff - Appellee*

v.

Marcus Coty

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 18, 2013
Filed: January 10, 2014
[Unpublished]

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

   The district court[1] revoked Marcus Coty's term of supervised release after finding that he had violated certain conditions of his release. The district court then

_____

   [1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

sentenced him to 24 months' imprisonment, to be followed by 36 months of supervised release. Coty appeals the revocation. We affirm.

In May 2006, Coty pleaded guilty to one count of knowingly and intentionally distributing more than five grams of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). He was sentenced to 60 months' imprisonment, followed by a four-year term of supervised release, which he began to serve on October 8, 2010.

On March 16, 2012, several individuals ran to Carolyn Wesley's home after shots were fired nearby. Police officers Christopher Rock and Adam Kruse were dispatched to Wesley's address. Wesley told Rock that she lived at the home with her husband and daughter and that her son, Coty, also stayed there. Rock asked for permission to search the home, and Wesley allowed the officers to do so. In the upstairs bedroom, the officers found a .40 caliber Hi-Point Smith & Wesson between the mattress and box spring of a bed. They also found marijuana, several rounds of ammunition, and evidence that the room belonged to Coty.

Coty's probation officer, Harriette Washington, thereafter petitioned the district court for revocation of Coty's release. The petition alleged that Coty had violated the conditions of his supervised release by possessing a firearm and ammunition, possessing marijuana, and failing to maintain employment. After Coty made his initial appearance on the petition, he was released to a treatment facility. Wesley visited Coty, and when they hugged, she slipped something into his pocket. A search of Coty revealed prescription drugs wrapped in newspaper.[2] Coty was discharged

---

[2]Wesley testified that her daughter delivered the pills to Coty. It does not matter to the disposition of this opinion whether Wesley or her daughter delivered the pills.

from the facility, and Washington amended the petition to include an allegation that Coty had failed to comply with the rules of the facility.

After receiving testimony from Coty, Wesley, Rock, Kruse, and Washington at the hearing on the petition, the district court found that Coty had violated the conditions of his supervised release. On appeal, Coty argues that the district court erred in finding that he possessed the contraband found in the upstairs bedroom and in finding that he wrongfully possessed prescription drugs at the treatment facility.

Under 18 U.S.C. § 3583(g), a district court must revoke a defendant's supervised release if the defendant possesses a controlled substance or possesses a firearm in violation of federal law. The government must prove by a preponderance of the evidence that the defendant violated a condition of supervised release. Id. § 3583(e)(3). "We review a district court's decision to revoke supervised release for abuse of discretion and its factfinding as to whether a violation occurred for clear error." United States v. Perkins, 526 F.3d 1107, 1109 (8th Cir. 2008). "When reviewing for clear error, 'we reverse only if we have a definite and firm conviction that the district court was mistaken.'" United States v. Rhone, 647 F.3d 777, 779 (8th Cir. 2011) (quoting United States v. Farmer, 567 F.3d 343, 346 (8th Cir. 2009)).

Coty argues that the government failed to prove that he constructively possessed the firearm, ammunition, and marijuana that were found in the upstairs bedroom. "Constructive possession of [a] firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993). Likewise, constructive possession of marijuana can be established if a person has "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002) (quoting United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997)).

The district court did not clearly err in finding that Coty knew of the contraband and had dominion over the premises where the contraband was located. It is undisputed that the firearm, ammunition, and marijuana were found in the upstairs bedroom of Wesley's home. Coty reported to the probation office that he lived at his mother's residence. Probation Officer Washington testified that she had met with Coty at Wesley's home and that Coty had told her that the upstairs bedroom was his. The police officers found evidence that the bedroom belonged to Coty, including Coty's debit card, mail addressed to Coty, and articles of clothing in Coty's size. When asked why he believed the room belonged to Coty, Officer Kruse replied, "There w[ere] probably a hundred letters with his full name on it . . . clothes hung up on racks, shoes. I mean, there was no other name anywhere besides Mr. Coty's in that room." Officer Rock testified that "every other bedroom [in the house] was occupied by somebody else." In light of the evidence, the district court did not credit Coty's testimony that he had not lived at the residence for several months, finding instead that the bedroom was his residence. The district court remarked that "if [Coty] decided that he wanted to be out and about, living someplace else or staying out [sic] places from time to time, that [did] not relieve him of the responsibility for what [was] in his possession in his room." We find no clear error in the district court's determination that Coty had violated the conditions of his supervised release by constructively possessing a firearm, ammunition, and marijuana.[3]

Coty next argues that the district court erred in finding that he had violated a condition of his supervised release by receiving unauthorized prescription medication while he was living at the treatment facility. He contends that he was not notified that he was prohibited from receiving prescription drugs and thus "the District Court violated his due process right to notice by finding that he violated the terms of his

_____

[3]In light of this conclusion, we reject Coty's argument that the district court misapplied the United States Sentencing Guidelines because it "relied on its determination that Mr. Coty was found in possession of a firearm and marijuana to revoke his supervised release." Appellant's Br. 15.

supervised release by receiving the medicines." Appellant's Br. 10. Coty's testimony, however, seems to indicate that he understood that any medical treatment had to be authorized by the staff at the facility. Coty testified that he had complained to the staff about a toothache, that they had given him ibuprofen, and that he was told that his probation officer had to authorize a pass to go to the hospital. Moreover, Coty's mother's surreptitious attempt to slip the newspaper-wrapped pills into Coty's pocket during an embrace belies Coty's claim that he was not aware of the prohibition against receiving prescription drugs. The district court thus did not clearly err in finding that "Mr. Coty was aware that he was not authorized to be receiving those medications."

The judgment is affirmed.

_____