# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3932

_____

United States of America

*Plaintiff - Appellee*

v.

Abraham M. Gomez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 18, 2013
Filed: January 13, 2014
[UNPUBLISHED]

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

The district court[1] revoked Abraham M. Gomez's term of supervised release after finding that he had committed another crime. The district court then sentenced

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

him to 42 months' imprisonment, with no supervised release to follow. Gomez appeals from the judgment of revocation. We affirm.

In December 2006, Gomez pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846, and one count of possession of a firearm during a drug transaction, in violation of 18 U.S.C. § 924(c)(1). On the government's motion, Gomez's sentence was reduced to time served on February 12, 2009. He then began to serve his four-year term of supervised release.

In April 2012, Gomez's probation officer petitioned the district court for revocation of his supervised release. The petition alleged that Gomez had violated a condition of supervised release by "commit[ting] another federal, state, or local crime." Specifically, the petition alleged that Gomez had sexually assaulted his girlfriend's fifteen-year-old daughter during the summer of 2011. The district court held a hearing on the petition, during which it received testimony from the minor (M.L.), her mother, her stepmother, her grandmother, and Mary Paine, Ph.D.

M.L. lived with her mother and Gomez during the summer of 2011 in Trumbull, Nebraska. One night in late June or early July, M.L. was lying on the couch in the living room watching television. She was wearing a nightgown and underwear. She fell asleep around midnight and was later awoken by Gomez knocking on the door. M.L. testified that Gomez was stumbling and seemed drunk. She let him into the home and returned to the couch. M.L. testified that Gomez followed her to the couch and rubbed her vagina over her underwear. According to M.L., she told him to stop and pushed him away when he refused to do so. Gomez then went to the bedroom he shared with M.L.'s mother. M.L. testified that she told her mother two weeks later and that her mother apologized, saying Gomez only did it because he was intoxicated.

M.L. returned to Montana in August 2011 to live at her father and stepmother's home. Her father was deployed to Afghanistan, and M.L. did not get along with her stepmother. It soon became clear that M.L. could not live with her stepmother, and M.L.'s stepmother suggested that M.L. might return to Nebraska. Eventually, M.L. went to live with her paternal grandmother, who sensed something was not right with M.L. M.L.'s grandmother asked her whether anyone had touched her inappropriately. M.L. responded in the affirmative and told her grandmother about the incident with Gomez. Gomez was charged with third-degree sexual assault in Clay County, Nebraska. The charges were later dismissed.

M.L.'s mother testified that M.L. never told her about the incident. According to M.L.'s mother, she and Gomez spent every night together during the summer of 2011, there was never a night when Gomez came home after midnight, and she had not seen him intoxicated. After receiving a phone call from M.L.'s stepmother regarding the incident, M.L.'s mother told Gomez of the accusation but did not ask him if he had committed the act.

M.L.'s family testified that she was a withdrawn youth who sometimes cut herself. M.L. had been fired from a job for threatening to stab a coworker, and M.L.'s stepmother worried that M.L. might become violent. M.L. did not like staying with her mother in Nebraska because her mother was on welfare and lived in a trailer. Dr. Paine testified that delayed disclosure of sexual abuse is common among victims, and that given M.L.'s circumstances, her delayed disclosures to her mother and then her grandmother were not surprising.

The district court credited M.L.'s testimony and found that Gomez had sexually assaulted M.L. The district court found M.L.'s mother's testimony not credible. On appeal, Gomez argues that the district court failed to apply the preponderance-of-the-evidence standard and relied instead on mere suspicion to find that Gomez had violated the conditions of his supervised release.

"We review a district court's decision to revoke supervised release for abuse of discretion and its factfinding as to whether a violation occurred for clear error." United States v. Perkins, 526 F.3d 1107, 1109 (8th Cir. 2008). "When reviewing for clear error, 'we reverse only if we have a definite and firm conviction that the district court was mistaken.'" United States v. Rhone, 647 F.3d 777, 779 (8th Cir. 2011) (quoting United States v. Farmer, 567 F.3d 343, 346 (8th Cir. 2009)). The government must prove by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3).

Gomez argues that "[t]he district court abused its discretion in finding the victim's mother's testimony incredible over the testimony of a troubled teen who obviously wanted to avoid being sent back to Nebraska to live on welfare in a trailer with her mother." Appellant's Br. 14. As evidence that M.L. was not credible, Gomez argues that M.L. had made inconsistent allegations, delayed reporting the incident, and could not remember when the assault occurred or how long she had known Gomez. Gomez, however, has not shown that the district court's credibility findings were clearly erroneous. The district court heard the witnesses' testimony and asked detailed follow up questions of M.L. and her mother. It also considered Gomez's argument that M.L. concocted the story to avoid returning to Nebraska. The district court was in a position to assess the credibility of M.L. and her mother, and we find no reason to disturb its findings on appeal. United States v. Bunch, 707 F.3d 1004, 1006 (8th Cir. 2013) ("It is not our role to re-weigh evidence and substitute our own credibility assessments for those of the district court.").[2]

The judgment is affirmed.

_____

[2]Gomez argues that his due process rights were violated because "the district court used the fact of arrest as evidence." Appellant's Br. 14. Although the district court was aware of the charge and its dismissal, there is no indication that the district court considered the fact of Gomez's arrest as evidence that he had committed the crime.