# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-2284

_____

United States of America

*Plaintiff - Appellee*

v.

Darrell Gene Andersen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: January 9, 2017
Filed: February 17, 2017
[Unpublished]

_____

Before COLLOTON, MURPHY, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Darrell Andersen was on supervised release when a sweat patch he wore to detect drug use showed positive for cocaine and cocaine metabolite. After a hearing

the district court[1] determined that Andersen had violated the conditions of his release and sentenced him to seven months imprisonment. Andersen appeals, and we affirm.

I.

In May 2004 Darrell Andersen was sentenced to 150 months imprisonment and eight years of supervised release for drug related offenses. Andersen completed his term of imprisonment and began supervised release in February 2014. A condition of Andersen's release was that he refrain from the use of controlled substances. In March 2016 the United States Probation Office began monitoring Andersen's compliance with this condition through the use of sweat patches which capture the wearer's sweat over a period of time. Sweat absorbed by the patch can then be tested for the presence of controlled substances and their metabolites.

In April 2016 a sweat patch that Andersen had been wearing for a week was removed and tested. In an initial test Andersen's patch tested positive for cocaine metabolite. The presence of cocaine metabolite "indicates that the wearer's body has broken down cocaine" and is a basis for a conclusion that the wearer has actually used cocaine. United States v. Meyer, 483 F.3d 865, 867 (8th Cir. 2007). A subsequent test confirmed that cocaine metabolite was present in the sample. The confirmation test also revealed that the sample tested positive for cocaine. When asked about the results of the sweat patch tests, Andersen denied using cocaine. He further stated that while he was wearing the patch he had engaged in sexual intercourse with a woman who had been using crack cocaine. Andersen suggested that the woman's sweat had contaminated his patch and caused the positive tests.

After Andersen's sweat patch tested positive for cocaine and cocaine metabolite, the government filed a petition to revoke his supervised release. The

---

[1]The Honorable Linda R. Reade, Chief United States District Judge for the Northern District of Iowa.

district court held a hearing at which a probation officer testified about sweat patch procedures and the specific results in Andersen's case. Andersen denied that he had used cocaine and again offered his "sweaty sex" explanation for the positive tests. The district court determined that the government had established by a preponderance of evidence that Andersen had violated the terms of his supervised release by using cocaine. The district court sentenced Andersen to seven months imprisonment and four years of supervised release. Andersen appeals.

## II.

We review a district court's revocation of supervised release for abuse of discretion "and its underlying factual findings as to whether a violation occurred for clear error." United States v. Rhone, 647 F.3d 777, 779 (8th Cir. 2011) (internal quotation marks omitted). We will find that a district court committed clear error "only if we have a definite and firm conviction that the district court was mistaken." Id. (internal quotation marks omitted).

Andersen argues that the district court clearly erred in finding that he had violated the conditions of his supervised release. Andersen points to two facts in support of his argument. First, Andersen notes that the confirmation test performed on his sweat patch indicated merely that cocaine metabolite was "present." Notations on the test results seem to indicate that there is a difference between a "present" result and a "positive" result, and that the latter indicates a higher concentration of cocaine metabolite than the former. Andersen suggests that the lower amount of cocaine metabolite indicated in the "present" confirmation test result supports his contention that his patch was contaminated during his sexual activity with a woman who had been using crack cocaine. Second, Andersen notes that the confirmation test results indicate that there was significantly more cocaine than cocaine metabolite in the sample tested. Andersen argues that the ratio of cocaine to cocaine metabolite in his test results also supports his environmental contamination argument. Andersen

argues that these facts should have led the district court to conclude that the government had failed to establish by a preponderance of the evidence that he had used cocaine.

We have repeatedly noted that "sweat patch results are a generally reliable method of determining whether an offender has violated a condition of his or her probation." Meyer, 483 F.3d at 869; see, e.g., United States v. Tolliver, 637 F. App'x 245, 245 (8th Cir. 2016) (per curiam). We have also noted, however, that "[t]here may well be certain instances where offenders offer compelling reasons to believe that positive test results from sweat patches are erroneous." Meyer, 483 F.3d at 869. We must therefore determine whether the evidence and explanations offered by Andersen are compelling enough to call into question the reliability of the sweat patch test results in this case. We conclude that they are not.

With respect to Andersen's first argument, we note that he focuses his attention entirely upon the second test performed on his sweat patch sample, which he alleges indicated that cocaine metabolite was merely present. The laboratory also performed an initial test on Andersen's sweat patch, however, which reflected a "positive" result for cocaine metabolite. Andersen has given no reason to call into question the reliability of the first test and its positive result, which would seem to undermine his contention that a "present" instead of "positive" result on the second test supports his view that his sweat patch was subject to environmental contamination.

Even if we were also to focus exclusively on the results of the second test, however, we would not find the "present" result sufficient to undermine the district court's determination that the government had proven the supervised release violation it alleged. A probation officer testified at Andersen's supervised release revocation hearing that the results of the second test were "a representation confirming that [cocaine metabolite] was present and it met or was above the threshold" for establishing a positive test. Andersen offered no evidence to the contrary. Under

-4-

these circumstances, the district court did not clearly err when it relied on the test results and supporting testimony to conclude that the government had proven by a preponderance of the evidence that Andersen had violated the conditions of his supervised release by using cocaine.

Andersen's second argument also fails to establish clear error by the district court. In support of his argument that the ratio of cocaine to cocaine metabolite suggests environmental contamination rather than direct consumption, Andersen cites expert testimony given in Meyer, 483 F.3d at 867. The expert in that case said that seeing a "certain relative ratio" of controlled substance to metabolite can allow one to "feel more confident that those test results, in fact, are reflective of actual use of the drug." Merely pointing out that a certain ratio of controlled substance to metabolite might mean that it is less likely that a defendant personally used a controlled substance does not establish that the ratio in this case supports such a conclusion, however. To the contrary, the laboratory that tested Andersen's sweat patch concluded that both the first and second tests were positive. We therefore cannot say that the district court clearly erred when it determined that a preponderance of the evidence supported the government's contention that Andersen had violated the conditions of his supervised release by using cocaine.

Accordingly, we affirm the judgment of the district court.

_____