**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CHRISTOPHER D. FULTON,

    Defendant-Appellant.

No. 13-3287
(D.Ct. No. 2:10-CR-20002-KHV-DJW-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

submitted without oral argument.

Defendant-Appellant Christopher D. Fulton appeals his twenty-four-month

sentence following revocation of his supervised release. He asserts the district

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

court abused its discretion by imposing a variant sentence above the advisory United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). He bases his appeal on grounds the district court "relied on a legally defective trade-off notion, substituting extra prison time for a term of supervised release" for the purpose of punishing him for lack of remorse, resulting in a disproportionately severe sentence in comparison with his criminal history and the nature of his offense. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Fulton's twenty-four-month term of imprisonment.

## I. Factual and Procedural Background

Mr. Fulton has a lengthy history with regard to the revocation of his supervised release. In 2010, he pled guilty and received a conviction for being a felon in possession of a firearm for which he received a fifteen-month sentence, followed by a thirty-six-month term of supervised release conditioned, in part, on his cooperation with his probation officer and prohibition regarding committing new crimes and possessing firearms or illegal drugs. On November 25, 2011, Mr. Fulton began supervised release, and during the first year he agreed to a temporary transfer to a halfway house to resolve issues related to his continuing unemployment and positive drug test. Thereafter, in early 2013, the government filed a petition seeking revocation of Mr. Fulton's supervised release, alleging he illegally possessed prescription diuretic pills and broke halfway house rules, including possession of an unauthorized cell phone, providing a false statement to

-2-

a staff member, and refusing to obey a staff member's order. On April 12, 2013, following a hearing on the petition and Mr. Fulton's stipulation to the violations, the district court issued an order finding Mr. Fulton violated the terms and conditions of his supervised release but ordered his supervised release be continued because he obtained gainful employment and planned to reside with his mother–a law enforcement detective.

A few months later, on June 28, 2013, the government filed a second petition for revocation, alleging, in part, Mr. Fulton: 1) traveled for work (outside the state) without obtaining advance permission from his probation officer; 2) tested positive for marijuana and amphetamines; and 3) failed to inform his probation officer of his second job at a night club where, according to his Facebook page, he was "Head Security." At the revocation hearing, Mr. Fulton stipulated to all violations except his night club employment (but, at a later hearing, admitted he had worked there on weekends before he obtained his full-time job and had not reported it to his probation officer). Rather than revoking his supervision, the district court conditioned his supervised release on his returning to court every thirty days for a compliance review and warned him to take the conditions of his supervision seriously or they would revisit his history of violations "because the possibility is still out there that you will be revoked and sent to prison."

One month after the hearing, on August 20, 2013, Mr. Fulton appeared

before the district court for his thirty-day compliance review, at which time it noted his failure to comply with the conditions of travel by failing to provide documentation for another work trip, warned him failure to do so in the future would result in a violation of the terms of supervised release, and ordered him to appear on September 18, 2013, for another compliance review hearing. Mr. Fulton arrived late to that review hearing and was arrested and held in custody until a hearing the next day; he was then held in custody an additional day due to his failure to submit his monthly report and earnings verification. He was released on September 20, 2013, after he provided his probation officer with the necessary documents.

On October 24, 2013, the government filed another petition to revoke Mr. Fulton's supervised release based not only on his past violations but additional violations, including allegations he possessed a firearm while driving a company truck and used, without his employer's permission, a company credit card at a local bar to purchase alcohol, thereby failing to abstain from the possession of a firearm and use of alcohol during his term of supervision. It also noted he was terminated from his employment and was therefore unemployed, in violation of the conditions of his supervised release. During a hearing on the matter, Mr. Fulton stipulated to most of the violations and the government presented evidence on those, as well as the firearm and alcohol use violations Mr. Fulton contested. While his employer testified Mr. Fulton was not authorized to use the company

-4-

credit card for the alcohol purchase, the government admitted it could not prove

Mr. Fulton drank the alcohol he purchased but argued his actions showed his

continued poor judgment. Other evidence showed employees besides Mr. Fulton

had access to the truck where the firearm was found. While his counsel

acknowledged Mr. Fulton had "tested [the court's] patience several times by just

not following through with what he's supposed to do," she asked the court not to

place significant weight on the credit card or firearm issues. The government

pointed out the credit card use and firearm discovery incidents were merely in

addition to the other violations to which he stipulated.

In revoking Mr. Fulton's supervised release and imposing a sentence, the

district court stated, in part:

> Mr. Fulton, unfortunately I think we're at the end of the road here. I haven't counted up the number of these status conferences we've had but I feel like I have gone way out of my way to give you the benefit of the doubt. I feel like you have conned me time and time again by your smooth talk and your statements that you want to do better, that you plan to do better and that you can do better.
>
> Because of that, I've been reluctant to pull the rug out from under you because you had a really good job that you said you enjoyed and you said you were surrounded by people that were making a positive impact in your life.
>
> I guess I feel like [I] just haven't been able to get through to you that haphazard compliance with supervised release is not good enough. And you had problems with supervised release from the outset ....
>
> At this point, I think the only alternative is to put you in prison and put you in for a fairly long sentence ... that will not be followed

by any supervised release. I frankly don't think that you are trying hard enough to succeed on supervised release to make it worth the expenditure of resources in terms of money, the time of the probation officer and definitely my time and that of the Court staff who have had to deal with you over and over and over with the problems you've presented.

Again, it's not like any ... one thing taken in isolation ... but it's the cumulation of a lot of little things that you just don't seem willing to accept responsibility for. And as I heard you here this afternoon, again, I heard you accept no responsibility for anything. No responsibility for using the credit card, for drinking or not drinking, for being in a bar at 12:30 [a.m.], for how that gun got in your car ... for the things that are as simple as working with [the probation officer] to get permission to travel when you know you have to do that.

The district court then imposed a twenty-four-month sentence and, after Mr. Fulton's attorney's objection, explained revocation was mandatory based on his illegal possession of controlled substances and it based his sentence not only on his violations but Mr. Fulton's defiance of the court's requirements during supervised release, stating, "I am convinced from what I know of his own personal history and characteristics that he's not willing or able to successfully meet the Court's expectations and at this point, the drain on the Court's resources from unsuccessful efforts to supervise him just can't be any further justified." It further explained that while the advisory Guidelines range was eight to fourteen months, if it sentenced him to twelve months his sentence would be followed by two additional years of supervised release, which, it stated, "I think would be ridiculous given his performance on supervised release. So that's why I'm

-6-

basically doing the trade-off."

## II.  Discussion

Mr. Fulton appeals his twenty-four-month sentence following revocation of his supervised release.  He asserts the district court abused its discretion by imposing a variant sentence, which is twice the sentence recommended by the Guidelines, because it "relied on a legally defective trade-off notion, substituting extra prison time for a term of supervised release ...."  He alleges the district court did this for the purpose of punishing him for lack of remorse, resulting in a disproportionately severe sentence in comparison with his criminal history and the nature of his offense.  In considering the lack of such remorse, Mr. Fulton claims the district court made an implicit, erroneous finding he was responsible for the gun and consumed alcohol in violation of his supervised release.

Under the Federal Rules of Criminal Procedure and 18 U.S.C. § 3583, when a person violates the conditions of supervised release, the district court may modify the conditions of release or revoke the term of supervised release and impose prison time.  *See United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir. 2004); 18 U.S.C. § 3583(e)(2) and (3); Fed. R. Crim. P. 32.1(b); U.S.S.G. § 7B1.3(a).  In imposing a sentence following revocation of supervised release, the district court is required to consider both the Guidelines Chapter Seven policy

statements as well as the factors provided in 18 U.S.C. § 3553(a).[1] *See United States v. Cordova*, 461 F.3d 1184, 1188 (10th Cir. 2006). "The court may, after considering the factors set forth in" § 3553(a)(1)-(7), "revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense ...." 18 U.S.C. § 3583(e)(3). In this case, it is undisputed the advisory Guidelines range for Mr. Fulton on revocation is eight to fourteen months imprisonment. *See* U.S.S.G. §§ 7B1.3(a), (b) and 7B1.4(a). However, § 3583 authorizes the district court to impose a maximum sentence of up to two years in prison, and, in this case, the term of supervised release cannot exceed the term authorized by statute for the original offense, which in this case is three years. *See* 18 U.S.C. § 3583(e)(3).

Generally, we will not reverse a sentence following revocation of supervised release if the record establishes the sentence is "reasoned and reasonable." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005). Our appellate review for reasonableness is for abuse of discretion. *See United States v. Ruby*, 706 F.3d 1221, 1225 (10th Cir. 2013). We review the district court's factual findings for clear error and its legal conclusions de novo.

---

[1] The Chapter Seven policy statements include advisory Guidelines ranges for sentences following revocation of supervised release. *See generally* Ch. 7 and U.S.S.G. §§ 7B1.3 and 7B1.4. With respect to the sentencing factors, they include, in part, not only the nature of the offense but the history and characteristics of the defendant as well as the need for the sentence to provide adequate deterrence and protect the public. *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006); 18 U.S.C. § 3553(a).

*See id.* "[A]lthough a district court must provide reasoning sufficient to support the chosen variance, it need not necessarily provide 'extraordinary' facts to justify *any* statutorily permissible sentencing variance." *United States v. Smart*, 518 F.3d 800, 807 (10th Cir. 2008).

In this case, the district court explained its reasons for the variant twenty-four-month sentence by explaining its belief a within-Guidelines sentence, followed by a long term of supervised release, would not sufficiently deter Mr. Fulton from future violations of supervised release given his defiant attitude and past and ongoing failure to follow the conditions imposed, even after receiving multiple opportunities to correct his behavior. In so doing, it clearly rejected Mr. Fulton's argument some leniency was required, and it considered all the violations to which he stipulated or were proven by the evidence, including that he: 1) illegally possessed prescription diuretic pills and tested positive for marijuana and amphetamines; 2) broke halfway house rules, including possession of an unauthorized cell phone, providing a false statement to a staff member, and refusing to obey a staff member's order; 3) traveled outside of his town and the state for work on multiple occasions without obtaining advance permission from his probation officer; 4) failed to timely appear before the district court at a hearing; and 5) failed to submit his monthly report and earnings verification. As the district court pointed out, it is the cumulation of these violations after multiple opportunities to correct his behavior, together with his defiant attitude

and its belief he would continue to fail to abide by the conditions of supervised release, that compelled it to imposed a variant sentence without supervised release. Not only is such sentence permissible under the law but nothing in the law or the circumstances of this case makes such a "trade-off" impermissible. Instead, the district court's reasoning is sufficient to support Mr. Fulton's variant sentence. This is true, even without considering his unauthorized use of a company credit card to purchase alcohol or any inference he consumed that alcohol or possessed a firearm.

In addition, it is clear the district court imposed the sentence it did for the reasons previously referenced and not merely for the purpose of punishing Mr. Fulton for lack of remorse with regard to the firearm or alcohol incidents. In referencing the cumulation of his multitude of violations, it noted he had failed to accept responsibility for them, and only after that did it comment the same was true with regard to his allocution that day during sentencing when he failed to take any responsibility with regard to "using the credit card, for drinking or not drinking, for being in a bar at 12:30 [a.m.], for how that gun got in your car ...."

Similarly, the fact his sentence is almost twice the recommended advisory Guidelines range does not make his sentence unreasonable, given the circumstances presented with respect to his multitude of violations, even when considered with his prior criminal history and the nature of his instant offense. In this case, the variance is explicable by the facts presented in the record on appeal

and the district court's reasoning is sufficiently compelling to support the degree of the variance.  As a result, it has satisfied us it had a reasoned and reasonable basis for the variance.

## III.  Conclusion

Accordingly, we **AFFIRM** Mr. Fulton's twenty-four-month sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge