FILED
United States Court of Appeals
Tenth Circuit

February 3, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TREMALE ODALE HENRY,

Defendant - Appellant,

No. 15-6181

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:06-cr-00088-F-1)

Kyle Edward Wackenheim, Research and Writing Attorney (Teresa K. Brown,
Assistant Federal Public Defender, with him on the briefs), Office of the Federal
Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Timothy W. Ogilvie, Assistant U.S. Attorney (Mark A. Yancey, Acting U.S.
Attorney, with him on the brief), Office of the U.S. Attorney, Oklahoma City,
Oklahoma, for Plaintiff-Appellee.

Before **GORSUCH, BALDOCK,** and **PHILLIPS**, Circuit Judges.

**GORSUCH**, Circuit Judge.

What began as a fight at a strip club finds its way here as a clash over hearsay. Three years ago, Tremale Henry finished a prison sentence for violating federal drug laws and began a five year term of supervised release. As a condition of his release Mr. Henry had to refrain from committing further crimes. But last summer he was arrested for assaulting another man outside Night Trips, an Oklahoma City night club. And at the probation revocation hearing that followed the district court found Mr. Henry responsible for two separate assaults with a dangerous weapon. In the first assault, the court found that Mr. Henry swung a knife at his victim but missed. In the second assault an hour later, the court found that Mr. Henry struck again, this time successfully stabbing his victim. The court found each assault independently sufficient to warrant revocation of Mr. Henry's supervised release. It then concluded that the two assaults, along with a third violation for lying to his probation officer, collectively warranted a new prison term of 24 months followed by six further years of supervised release. On appeal Mr. Henry argues that the district court impermissibly relied on hearsay in reaching its judgment, but with this we can only partially agree.

Take the first assault first. In finding that Mr. Henry committed this assault the district court relied largely on statements from Candace Ramsey. Ms. Ramsey testified at the revocation hearing that she saw Mr. Henry lunge at his victim with a small object, though she said she couldn't see exactly what the

object was.  Meanwhile, a probation officer took the stand to relate that, before the hearing, Ms. Ramsey told him she had, in fact, seen Mr. Henry use a knife. The district court apparently credited this hearsay.  The court also said it relied on a surveillance video.  To be sure, the video "was of poor quality" and it is not possible to discern a knife.  But the video does show Mr. Henry making a rapid movement toward the victim, followed by witnesses fleeing the area, and the court found this reaction consistent with a violent assault involving a dangerous weapon.  In reaching its judgment, the district court considered as well testimony from the defendant's own witnesses who suggested that the victim "deserved what happened to him that night" and that there was "ill will" between the two men. Taken together, the court found, these facts established Mr. Henry indeed committed the first assault with a dangerous weapon.

We see no problem with the district court's findings here.  Mr. Henry doesn't object to the use of the video, to Ms. Ramsey's live testimony, or to the district judge acting as fact-finder.  His only qualm is with the court's apparent reliance on Ms. Ramsey's hearsay statement, relayed by the probation officer, that she had seen a knife.  But the fact is that "the usual rules of evidence need not be applied" in revocation hearings.  *See* Fed. R. Crim. P. 32.1 advisory committee's note to 1979 amendment.  Indeed, the Supreme Court and this one have long allowed hearsay in supervised release proceedings:  sometimes the government will use hearsay in arguing for revocation; sometimes the defendant will use

hearsay in arguing against revocation (as Mr. Henry himself did in this case). In neither event are confrontation or due process rights necessarily denied, for under settled precedent the Confrontation Clause of the Sixth Amendment does not apply to supervised release revocation proceedings and the due process guarantees associated with these proceedings are "minimal." *See Morrissey v. Brewer*, 408 U.S. 471, 485, 489 (1972) (describing due process guarantees at revocation hearings as "minimal" and explaining that "the process should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial"); *see also* Fed. R. Evid. 1101(d)(3) (federal rules of evidence do not apply in proceedings "granting or revoking probation or supervised release"); *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 366 (1998); *Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010) (the Sixth Amendment Confrontation Clause does not apply to supervised release proceedings).

In the face of all this, Mr. Henry attempts a reply along these lines. He notes that Fed. R. Crim. P. 32.1(b)(2)(C) grants defendants in revocation hearings the opportunity to "question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear." Mr. Henry observes, too, that in *United States v. Jones*, this court recently held the proper application of Rule 32.1(b)(2)(C) generally requires a district court to deploy a "balancing test" aimed at weighing the defendant's interests in confronting a witness against the government's interests in foregoing the witness's appearance.

818 F.3d 1091, 1097-98 (10th Cir. 2016). And, Mr. Henry contends, the district court in this case failed to apply *Jones*'s balancing test to Ms. Ramsey's hearsay statement, meaning its decision must be reversed.

This reply, however, overstates the reach of the rule. For neither Rule 32.1(b)(2)(C) nor the *Jones* decision interpreting it applies to the admission of hearsay statements from witnesses who *are* available for cross-examination. By its express terms Rule 32.1(b)(2)(C) speaks only to whether an adverse witness is "require[d] . . . to appear" so that defendants might have the "opportunity to . . . question" her. In *Jones*, likewise, this court "confine[d] our analysis to [the defendant's] right to confront [the witness in question]," addressing only "Mr. Jones's strong interest in *confrontation and cross-examination*." *Jones*, 818 F.3d at 1097, 1102 (emphasis added). And, as everyone acknowledges, Ms. Ramsey did appear at the hearing and Mr. Henry did have the chance to question her about her hearsay statement and its apparent inconsistency with her live testimony. Indeed, it would be pretty anomalous if the qualified confrontation interest recognized by Rule 32.1 and our precedent conveyed rights in revocation hearings more powerful than those conveyed by the Sixth Amendment Confrontation Clause in criminal trials, for even in that setting the express terms of the Clause itself do nothing to "bar admission of a [hearsay] statement so long as the declarant is present at trial to defend or explain it." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

So it is Mr. Henry has no valid complaint under Rule 32.1(b)(2)(C) or *Jones* with respect to the first assault. He was free to confront Ms. Ramsey and, in this way, he was afforded everything the rule and our precedent interpreting it might provide. Of course, in holding Rule 32.1(b)(2)(C) and *Jones* do not apply to hearsay from witnesses present for confrontation, we do not suggest this sort of hearsay is always admissible. As ever, a district court's receipt of evidence remains subject to review for abuse of discretion. *See United States v. Handley*, 678 F.3d 1185, 1188 (10th Cir. 2012). And revocation hearings must of course always satisfy "minimal" due process demands. *Morrissey*, 408 U.S. at 485. But no one suggests Ms. Ramsey's statement to the probation officer falls afoul of these standards.[1]

When it comes to the second assault, the equation changes. In finding the second assault occurred the district court expressly relied on out-of-court statements the victim and his girlfriend made to a police detective, who in turn relayed them to Mr. Henry's probation officer, who in turn presented them at the revocation hearing. Neither the victim, nor his girlfriend, nor even the detective

---

[1] In his reply brief Mr. Henry argues for the first time that the government failed to afford him with adequate notice before his hearing that he faced the possibility of revocation for the first assault. But where an appellant raises an issue for the first time in his reply brief, we generally deem it waived. *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008). And in any event we do not see anything here that would amount to plain error, for the Tenth Circuit has yet to require the government to provide a "high degree of specificity" when providing notice about upcoming probation revocation hearings. *United States v. Mullane*, 480 F. App'x. 908, 910-11 (10th Cir. 2012) (unpublished).

was subject to cross-examination. Here, then, Rule 32.1(b)(2)(C) and *Jones* do apply, and here we must find error for the district court failed to conduct the balancing test *Jones* prescribes. To be clear, we can hardly fault the district court for this oversight: it decided Mr. Henry's case before this court issued *Jones* and lacked the benefit of its guidance. But the fact remains all the same that Mr. Henry is entitled to the advantages afforded by intervening legal developments like *Jones*. *See Griffith v. Kentucky*, 479 U.S. 314, 322-23 (1987).

The government doesn't dispute any of this. Instead, it tries to work around the problem by pointing to the district court's statement that the admission of hearsay from absent witnesses in this case was designed to serve the "interest of justice," a phrase used in the text of Rule 32.1(b)(2)(C) itself. And invoking this phrase, the government seems to suggest, should suffice in lieu of engaging with the *Jones* balancing test.

We cannot quite agree. The government can't (and doesn't) dispute that *Jones* offers controlling guidance concerning how district courts should go about determining if the "interest of justice" permits the introduction of hearsay from absent witnesses. Neither does (or can) the government dispute that *Jones* generally demands the application of a balancing test, or that the advisory note to Rule 32.1 expressly endorses the same test. And perhaps most importantly, the government doesn't (and can't) dispute that *Jones* itself rejected the very same argument it attempts here, expressly rebuffing the government's suggestion it was

- 7 -

enough for the district court to have cited the "interest of justice" language of Rule 32.1 without engaging its balancing test. *Jones*, 818 F.3d at 1100. Affording *Jones* the respect due precedent, we just don't see how we might faithfully hold otherwise here.

The question remains, of course, whether the error here proved harmless. *See* Fed. R. Crim. P. 52(a). The government suggests any error in the admission of hearsay concerning the second assault was indeed harmless because the district court needed to find only one assault to revoke Mr. Henry's supervised release, and its error-free finding on the first assault will do.

But though attractive on first blush, closer scrutiny reveals problems with this argument too. It's certainly true, as the government notes, that the district court found each assault independently sufficient to warrant revocation. But after doing that much the court proceeded to consider both of these violations *together* when fashioning its sentence, adding to the mix a third violation not challenged here (Mr. Henry's lies to his probation officer). And on the record before us, we simply cannot disaggregate what role, if any, the second violation played in the district court's final sentencing decision. To be sure, the court selected a sentence at the bottom end of the guidelines range. But the range was of course only advisory, so the defendant could have (and did) request a downward variance. And we cannot be sure that, had the court ruled differently on the second violation, it still would have denied a variance and issued the sentence it

did.  Had the court indicated its intention to issue the same sentence without respect to the second assault, we might be convinced that the error was harmless. *See, e.g.*, *United States v. Cordova-Arevalo*, 456 F.3d 1229, 1235 (10th Cir. 2006); *United States v. Anderson*, 189 F.3d 1201, 1214 (10th Cir. 1999).  But nothing like that exists in the record.  And where, as here, we can only speculate what sentence the district court would have issued absent a legal error, our precedent indicates that the error is not harmless, and that the matter should be returned to the district court for resentencing.  *See, e.g.*, *United States v. Harrison*, 743 F.3d 760, 764 (10th Cir. 2014).[2]

On remand, the district court's options remain considerable.  It might engage in a new sentencing analysis without relying on the second assault as a second independent probation violation.  It might conduct a *Jones* balancing test and determine the hearsay from absent witnesses was, indeed, properly considered in finding the second assault took place.  It might conduct the *Jones* test, determine that the hearsay from absent witnesses it entertained was not properly considered, and conduct a new hearing on the second assault.  Or it might consider even a still different path.  We do not encourage or prejudge the propriety of any potential remedial avenue, but hold only that on the record

---

[2]  Having found that the *Jones* error here doesn't qualify as harmless under Fed. R. Crim. P. 52(a), we have no need to consider whether a *Jones* error might trigger an even more heightened constitutional harmless error analysis.

before us the failure to conduct a *Jones* balancing test cannot be dismissed as harmless error.[3]

Remanded.

---

[3] In a petition for panel rehearing filed after we issued our decision, the government attempts yet another harmless error argument. Here the government accepts that the district court erred in finding a second independent probation violation at the (so-called) "guilt" phase of the revocation proceedings without first engaging the *Jones* test. But it claims this error was harmless because the district court would have been free under *United States v. Ruby*, 706 F.3d 1221, 1226 (10th Cir. 2013), to consider hearsay evidence about any "bad acts" of any sort at the "sentencing" phase of its revocation proceedings without addressing the *Jones* test. However that may be, though, this particular argument never found its way to us until the petition for panel rehearing so it has been forfeited. *United States v. Charley*, 189 F.3d 1251, 1264 n.16 (10th Cir. 1999)). Further and even on its own terms, the argument doesn't quite satisfy. For even if the district court could have considered hearsay evidence about the second assault at the "sentencing phase" without first engaging the *Jones* test, that's not what happened here. The district court used the second assault to find a second independent supervised release violation at the "guilt" phase of the revocation proceedings. And short of speculation we just cannot be sure what impact the district court's finding of a second and independent probation violation at the "guilt" phase had on its "sentencing" decision. Maybe in the district judge's mind nothing turned on whether the evidence surrounding the assault formally amounted to a second, independent violation instead of just more "bad acts"; but maybe it did. After all, district courts not infrequently cite the existence of multiple, independent supervised release violations (not just the "bad acts" underlying them) as factors influencing their sentencing decisions. *See, e.g.*, *United States v. Fulton*, 567 F. App'x 668, 673 (10th Cir. 2014); *United States v. Keller*, 372 F. App'x 883, 889 (10th Cir. 2010); *United States v. Hooks*, 368 F. App'x 885, 888 (10th Cir. 2010). Neither is harmless error doctrine license for rank speculation. When it comes to the loss of liberty, it is better to know on remand than guess on appeal.