**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GERARDO DELGADILLO, JR.,

    Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GERARDO DELGADILLO, JR.,

    Defendant - Appellant.

No. 22-4059
(D.C. No. 2:21-CR-00227-DAK-1)
(D. Utah)

No. 22-4060
(D.C. No. 2:21-CR-00157-DAK-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Gerardo Delgadillo, Jr. appeals the district court's judgments revoking the supervised release imposed in two criminal cases.[1]  He argues that the district court violated his confrontation right under Federal Rule of Criminal Procedure 32.1(b)(2)(C) by allowing the government to rely on hearsay evidence at the revocation hearing.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background

Jurisdiction over Mr. Delgadillo's supervised release in two other districts was transferred to the District of Utah.  While on supervised release, he moved to California, where he engaged in conduct that led to his being charged in the District of Utah with violating several conditions of his release.  He admitted most of the violations but denied two concerning conduct that was the subject of criminal charges filed against him in California state court:  (1) unlawfully taking property from another person by use of force or fear, and (2) committing serious bodily injury to another individual.  The basis for those charges is described in a police report of the Los Angeles Police Department (LAPD).

According to the report the complainant told police a man assaulted him in the alley behind a store and took his knife and cell phones.  A witness recorded part of the incident.  The video showed the alleged assailant and another man leaving the scene in a white van.  Using the license plate number shown on the video, police determined that the van was registered to a nearby business.  When they arrived at

---

[1] Mr. Delgadillo filed two appeals, one for each underlying district-court case. We procedurally consolidated the appeals.

the business shortly after the incident, they saw Mr. Delgadillo and the other man get out of a van with license plates that matched the one on the video. Because of the size of the video, the witness was unable to email it to police, but the witness gave them screenshot photos of the two men for identification purposes. Neither the complainant nor the witness could identify Mr. Delgadillo in a photo lineup, but the witness positively identified the other man. Police found two phones—one in Mr. Delgadillo's pocket and another in the van—and took both into evidence.

At the revocation hearing on June 23, 2022, counsel for the government indicated that she was relying on a police report to prove the violations and would not call any witnesses involved in the state criminal case. Mr. Delgadillo's Utah probation officer testified about the contents of the police report. She also testified that Mr. Delgadillo was employed by the business that owned the van and that the business was less than half a mile from the scene. On cross-examination she confirmed that her testimony about the incident was based entirely on the police report and that she had not talked to the complainant or the witness. She also confirmed that the report indicated that the witness did not start videotaping the fight until after it had started.

An investigator for defense counsel—the Federal Public Defender (FPD) in Utah—testified about Mr. Delgadillo's version of how the fight started.[2]

---

[2] Defense counsel indicated that Mr. Delgadillo himself did not testify because the state criminal case was still pending and counsel did not want to prejudice his defense in that case.

Mr. Delgadillo told the investigator he was waiting for his co-worker to come out of the store when the complainant "ran up to him . . . yelling" profanities and hit him. R., vol. IV at 17. Mr. Delgadillo hit the complainant back and they started fighting. The complainant had a knife but Mr. Delgadillo took it from him. When his co-worker came out of the store, Mr. Delgadillo threw the knife, and they left in the van.

In addition to testifying about Mr. Delgadillo's version of events, the investigator testified about the complainant's criminal history, including that he was on probation at the time of the incident and a condition of his probation was that he not possess dangerous weapons, such as knives. She also testified that she could not locate the witness and he did not respond to her phone message and text. She enlisted the help of an investigator for the FPD in Los Angeles who attempted to go to the witness's home, but the address he had given police was "nonexistent." *Id.* at 21. The local investigator also determined that the store did not have a surveillance video of the fight.

Invoking Rule 32.1(b)(2)(C), the government asked the court to admit the police report and determine that the interest of justice did not require witnesses from California to appear at the hearing. Over Mr. Delgadillo's objection that allowing the government to prove the contested revocation allegations based solely on the police report violated his confrontation rights, the court granted the government's request. And, based on the police report, the court found that the government had proved the allegations by a preponderance of the evidence. Accordingly, the court revoked Mr. Delgadillo's supervised release under 18 U.S.C. § 3583(e). The court then

4

sentenced him to 18 months in prison for each conviction, with the sentences to run concurrently.

On appeal Mr. Delgadillo challenges only the district court's Rule 32.1(b)(2)(C) ruling; he does not challenge its preponderance determination or the length of his prison sentence.

## II.    Discussion

"[T]he Confrontation Clause of the Sixth Amendment does not apply to supervised release revocation proceedings and the due process guarantees associated with these proceedings are minimal." *United States v. Henry*, 852 F.3d 1204, 1206 (10th Cir. 2017) (internal quotation marks omitted).  Under Rule 32.1(b)(2)(C), however, the accused in a revocation proceeding "is entitled to . . . an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear" in the revocation hearing.  In deciding whether the government may rely solely on hearsay evidence or whether a witness should appear, a district court must balance the accused's interest in confrontation against the government's "good cause for denying it." *United States v. Jones*, 818 F.3d 1091, 1099-1100 (10th Cir. 2016) (internal quotation marks omitted).  We review the district court's admission of evidence under Rule 32.1(b)(2)(C) for abuse of discretion. *See Henry*, 852 F.3d at 1207.

The reliability of the government's evidence is "a very important factor in determining the strength of a releasee's confrontation right." *Id.* at 1100 (internal quotation marks omitted).  "[S]tatements corroborated by detailed police

investigative reports" "possess[] recognized indicia of reliability." *Id.* at 1098 n.4 (internal quotation marks omitted). When a victim's and a witness's statements conveyed in a police report are consistent with the officers' investigation, "the police report provides indicia of reliability to the victim's statements." *Curtis v. Chester*, 626 F.3d 540, 547 (10th Cir. 2010); *see also United States v. Cook*, 550 F.3d 1292, 1297 (10th Cir. 2008).

In support of her request that the court allow her to rely solely on the police report to prove the contested revocation allegations, counsel for the government explained that she did not want to subpoena witnesses to travel to Utah "during a pandemic" when the county where the hearing was held was "in the high risk category." R., vol. IV at 5. She argued that Mr. Delgadillo's interest in cross-examination was minimal given that the incident had been recorded, police identified him based on screenshots from the recording, and he was apprehended less than half a mile from the scene in the van shown in the video. And because the complainant's and the witness's statements to police, the video, the van, and the officers' observations all "matched up," *id.* at 27, she argued that the police report was sufficiently reliable to be admitted under Rule 32.1(b)(2)(C) without affording Mr. Delgadillo an opportunity for cross-examination.

Mr. Delgadillo disputed that the government had good reasons for not presenting witnesses at the hearing, noting that doing so via video would have been an appropriate solution. He also argued that his interest in confronting the complainant was significant because although "this fight did occur," *id.* at 25, he

6

needed to cross-examine the complainant about how the fight started, his criminal history, and the fact that he had a knife during the fight despite his probation status. Mr. Delgadillo maintained that "without [the complainant] here, the evidence provided in this police report . . . is just not reliable enough." *Id.* at 26. He did not argue that he needed an opportunity to cross-examine either the witness or the officers.

The district court concluded that, given "the difficulties of the pandemic" and "of reaching these people, their unresponsiveness," the government had "plenty of good cause for denying" Mr. Delgadillo's opportunity for confrontation of the complainant. *Id.* at 29. Based on that finding, the court held that the government had met its burden under Rule 32.1(b)(2)(C).

The district court did not abuse its discretion. Mr. Delgadillo complains that the government did not "speak with any potential witnesses" or "explain why witnesses could not have appeared by video." Aplt. Br. at 8. Counsel for the government explained that she had been unable to contact witnesses with the LAPD, but she did not say what efforts, if any, had been made to contact the complainant and the witness. Mr. Delgadillo did not argue at the hearing and does not argue on appeal that he needed to cross-examine the witness, so we are not concerned about the government's failure to subpoena him to appear at the hearing by video. We are troubled by the government's failure to explain what efforts, if any, it made to contact the complainant and why it did not subpoena him to appear by video. But given the corroboration of his statement to police by the witness's statements, the

video and photos, and the investigation—including that police found two of the items the complainant said had been stolen from him in Mr. Delgadillo's pocket and in the van—we conclude that the district court acted within its discretion in admitting the police report as reliable hearsay evidence. *See Curtis*, 626 F.3d at 547; *Cook*, 550 F.3d at 1297. And given the inherent reliability of the police report, we also find no abuse of discretion in the district court's conclusion that the government's reasons for not presenting witnesses at the hearing outweighed Mr. Delgadillo's interest in cross-examining the complainant about how the fight started and to test his credibility, particularly since the complainant never identified Mr. Delgadillo as the culprit.

### III.    Conclusion

Because we find no abuse of discretion in the district court's Rule 32.1(b)(2)C) determination, we affirm the judgments revoking Mr. Delgadillo's supervised release.

Entered for the Court

Harris L Hartz
Circuit Judge