**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER MARTINEZ,

Defendant - Appellant.

No. 24-1467
(D.C. No. 1:20-CR-00130-WJM-1)
(D. Colo.)

———————————————

## ORDER AND JUDGMENT[*]

———————————————

Before **TYMKOVICH**, **MATHESON**, and **FEDERICO**, Circuit Judges.

———————————————

Defendant Christopher Martinez appeals the district court's judgment revoking his term of supervised release. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I**

In 2010, Mr. Martinez pleaded guilty to one count of traveling in interstate commerce with intent to engage in illicit sexual conduct with a juvenile female. He was sentenced to a term of imprisonment of sixty months, to be followed by a lifetime term of supervised release.

Mr. Martinez began his term of supervised release in 2014. In 2020 and again in 2021, Mr. Martinez was "unsuccessfully discharged" from sex-offender treatment programs and had his supervised release revoked for engaging in deceptive behaviors. R. I at 22. He was sentenced to five months in prison for the first revocation and ten months in prison for the second revocation. His lifetime period of supervised release was continued on both occasions.

In June 2022, Mr. Martinez was released from custody and reenrolled in his prior sex-offender treatment program, Teaching Humane Existence (THE). In August 2024, Mr. Martinez was "unsuccessfully discharged" from THE due to violating rules and regulations outlined in his THE treatment contracts. *Id.* This included failing to maintain a positive treatment attitude, failing to complete homework assignments, failing to abide by the requirements of his shared-living-arrangement agreement, utilizing an unmonitored and unapproved internet-capable device, failing to attend an adjunct mental health session, failing to comply with accountability

2

standards at a process group session, and exhibiting a lack of transparency with his community supervision team.

Following his discharge from THE, Mr. Martinez's probation officer filed with the district court a petition for warrant alleging Mr. Martinez violated the terms and conditions of his supervised release by (1) failing to comply with the rules and regulations of THE, (2) failing to maintain employment, and (3) making false statements to his probation officer about his efforts to obtain day labor. Attached to the petition was a copy of a discharge summary prepared by Mr. Martinez's primary therapist at THE.

Following his arrest, Mr. Martinez, through counsel, filed a motion pursuant to Federal Rule of Criminal Procedure 32.1(b)(2)(C) "to require any adverse witnesses [to] be present at the supervised release revocation hearing so" they could "be questioned." R. I at 29. In his motion, Mr. Martinez alleged he "intend[ed] to admit to all alleged violations except violations of the rules and regulations of [THE]." *Id.* at 30. But Mr. Martinez also argued he had a "constitutional right to confront . . . all providers, therapists, and other staff from THE who were present or spoke to [him] in connection with any and all violations alleged in the THE discharge summary." *Id.*

The government opposed the motion, arguing it was "entirely unreasonable to ask 'all providers, therapists, and other staff' from a

medical facility to simultaneously abandon pre-existing patient care duties to testify about a lengthy course of treatment." *Id.* at 35. The government further argued that Mr. Martinez "failed to show why there [wa]s good cause to cross-examine regulated medical professionals writing about medical treatment rendered on the basis of" Mr. Martinez's "own undenied statements and in circumstances where there [wa]s no dispute that he was, in fact, terminated from treatment." *Id.* at 38–39. The government also noted that Mr. Martinez's primary therapist and the author of the discharge summary was "on family leave until January 6, 2025." *Id.* at 37. Finally, the government argued that because Mr. Martinez did "not appear to be disputing the statements" in the discharge summary, and because he could not "possibly articulate why medical professional would fabricate [the] incidents" described in the discharge summary, it was "unreasonable to believe that cross-examination w[ould] have any meaningful influence on the[] [revocation] proceedings." *Id.* at 40.

The district court denied Mr. Martinez's Rule 32.1(b)(2)(C) motion in a text-only docket entry that stated: "Defendant's Motion is DENIED for lack of good cause shown." *Id.* at 49.

In November 2024, approximately a week after denying Mr. Martinez's motion, the district court held a hearing on the alleged violations of supervised release. Mr. Martinez contested only the allegations that he

4

failed to comply with THE's rules and regulations. To support those allegations, the government submitted the discharge summary prepared by Mr. Martinez's primary therapist and presented testimony from his probation officer. The probation officer testified that, during Mr. Martinez's supervised release, he communicated at least monthly with Mr. Martinez's treatment providers at THE regarding his conduct and progress in treatment. Those providers, the probation officer testified, expressed concerns about Mr. Martinez's motivation, engagement, and willingness to progress in treatment. The probation officer in turn testified that he discussed the provider's concerns with Mr. Martinez on at least ten occasions and that Mr. Martinez typically responded "as confused" and "often explained that he ha[d] never heard" those concerns "before." R. III at 21. The probation officer testified that Mr. Martinez's purported "confusion . . . was concerning" because the specific areas of concern expressed by his treatment providers "ha[d] been brought up on a recurring basis." *Id.*

The probation officer also testified he was personally familiar with the details underlying the allegation that Mr. Martinez used an unmonitored and unapproved internet-capable device on September 11, 2023. The probation officer proceeded to testify about the details of that incident, which involved Mr. Martinez's use of his father's computer. The

5

probation officer testified this was a violation of the conditions of Mr. Martinez's supervised release, as well as Mr. Martinez's contract with THE.

Lastly, the probation officer testified about Mr. Martinez's attitude and the credibility of treatment providers at THE. The probation officer testified Mr. Martinez was typically disengaged from conversations and "generally presented as annoyed, frustrated, and communicat[ed] in a passive-aggressive tone." *Id.* at 26. As for the credibility of THE's treatment providers, the probation officer testified they were "most reliable in assessing [Mr. Martinez's] behaviors and measuring how [those] line[d] up with [his] longterm [sic] success in the community and . . . mitigating the risk of creating additional victims." *Id.* at 28. The probation officer also testified he had no reason to doubt the information contained in THE's discharge summary.

During cross-examination, the probation officer testified that what was "portrayed in . . . THE['s] discharge [summary] [wa]s that . . . efforts were made" to treat Mr. Martinez, but that "court intervention is called for when the therapist ethically believes that they're just holding someone into treatment without full progress." *Id.* at 32. As for Mr. Martinez's use of his father's computer, the probation officer conceded Mr. Martinez told him he used it for a job search. But, the probation officer further testified, "given [Mr. Martinez's] history and characteristics and being dishonest with our

office, I can't say that I would believe his report based on those facts." *Id.* at 34. Lastly, the probation officer conceded he was "not present" for most of the allegations contained in THE's discharge summary. *Id.* at 41.

At the conclusion of the hearing, the district court found by a preponderance of the evidence that Mr. Martinez failed to comply with the rules and regulations specified by THE and, by doing so, also violated the conditions of his supervised release. Based upon these violations and the other two violations admitted by Mr. Martinez, the district court revoked Mr. Martinez's supervised release and sentenced him to a term of imprisonment of fourteen months, to be followed by a ten-year term of supervised release.

## II

On appeal, Mr. Martinez contends the district court erred by denying his Rule 32.1(b)(2)(C) motion to have his treatment providers testify at the revocation hearing so that he could confront and cross-examine them. We

review the district court's decision for abuse of discretion.[1] *United States v. Faunce*, 66 F.4th 1244, 1257 (10th Cir. 2023); *see United States v. Henry*, 852 F.3d 1204, 1207 (10th Cir. 2017) ("a district court's receipt of evidence" at a revocation hearing "remains subject to review for abuse of discretion"). "An abuse of discretion occurs when a district court's decision is arbitrary or capricious or results in a manifestly unreasonable judgment." *Faunce*, 66 F.4th at 1257.

It is well established that "the Confrontation Clause of the Sixth Amendment does not apply to supervised release revocation proceedings and the due process guarantees associated with these proceedings are 'minimal.'" *Henry*, 852 F.3d at 1206 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972)). That said, "Fed. R. Crim. P. 32.1(b)(2)(C) grants defendants in revocation hearings the opportunity to 'question any adverse

---

[1] The government argues we should review the district court's decision only for plain error because Mr. Martinez never argued to the district court that it failed to apply the correct legal standard and analysis. We reject that argument for two reasons. First, the cases the government cites in support are inapposite. *See* Aple. Br. at 10. Second, and more importantly, a review of the district court record firmly establishes that Mr. Martinez argued the correct legal standards in his Rule 32.1(b)(2)(C) motion. Notably, the government likewise discussed the correct legal standards in its brief in opposition to Mr. Martinez's motion (and it concedes as much in its appellate response brief). Thus, the issue was squarely presented to the district court, and it was unnecessary for Mr. Martinez to file a motion for reconsideration in order to preserve the issue for appeal. *See United States v. Burris*, 29 F.4th 1232, 1234 n.1 (10th Cir. 2022).

witness, unless the judge determines that the interest of justice does not require the witness to appear.'" *Id.* at 1207 (quoting Rule 32.1(b)(2)(C)). In *United States v. Jones*, 818 F.3d 1091 (10th Cir. 2016), this court "held the proper application of Rule 32.1(b)(2)(C) generally requires a district court to deploy a 'balancing test' aimed at weighing the defendant's interests in confronting a witness against the government's interests in foregoing the witness's appearance." *Henry*, 852 F.3d at 1207 (quoting *Jones*, 818 F.3d at 1097).

Mr. Martinez argues the district court erred because it denied his motion without conducting the necessary balancing test. We agree. The district court summarily denied Mr. Martinez's motion in a text-only docket entry that stated: "Defendant's Motion is DENIED for lack of good cause shown." R. vol. I at 49. This explanation failed to acknowledge, let alone apply, the balancing test we have held is required under Rule 32.1(b)(2)(C).

Having found error, we must next determine whether the district court's error was harmless. *See Henry*, 852 F.3d at 1208; Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). The government argues the error was harmless because, even if the district court had "explicitly applied the balancing test, the outcome would not have changed." Aple. Br. at 16. According to the government, "the good cause was strong" for denying Mr.

9

Martinez's motion because "the main therapist and the discharge summary's author was on family leave" and requiring "all providers who interacted with [Mr.] Martinez" to appear and testify at the revocation hearing "would [have left] only one provider to keep a vital program running during the hearing." *Id.* "On the other side of the ledger," the government argues, Mr. Martinez's interests in confronting his treating therapist and the other providers at THE was low because the written discharge summary "was indisputably reliable." *Id.* at 16–17. The government notes "[t]he discharge summary was written by a licensed medical professional about a course of treatment" and its "reliability is bolstered by the fact that it was submitted under the penalties of 18 U.S.C. § 1001, [it is] internally consistent, and [it is] corroborated by the probation officer's observations and [Mr.] Martinez's prior revocations." *Id.* at 17. The government also notes that Mr. Martinez has never challenged the contested hearsay as unreliable. Instead, the government notes, Mr. Martinez simply argues "that the providers," if allowed to testify, "could have given context to his behavior and their subjective opinions." *Id.* at 18. Finally, the government notes that Mr. Martinez "never subpoenaed anyone" and "did not ask to postpone the hearing until the main therapist was available, illuminating the weakness of his actual confrontation interest." *Id.* at 19.

After considering the government's arguments and the record on appeal, we agree the district court's error was harmless.[2] We note, as an initial matter, that there is no dispute Mr. Martinez was discharged from THE's treatment program. As we understand it, the gist of Mr. Martinez's challenge below and on appeal is that the discharge was subjective and unwarranted. But the discharge summary prepared by his primary therapist cites a number of reasons for the discharge and Mr. Martinez fails to seriously challenge most of those reasons.[3]

To be sure, he argues on appeal that cross-examination of THE staff members "could have" (a) "revealed potential bias stemming from THE's financial relationship with the probation office and a motive to secure"

---

[2] We reach this conclusion regardless of whether the error is treated as constitutional or non-constitutional. *See Henry*, 852 F.3d at 1209 n.2 (declining to decide whether similar error "might trigger an even more heightened constitutional harmless error analysis").

[3] For example, the discharge summary listed various rule violations that Mr. Martinez committed during his two years of treatment at THE. It also noted Mr. Martinez: failed to fully complete or turn in homework assignments for one session in December 2022 and three sessions in early 2023; engaged in the unauthorized use of his father's computer in September 2023; went alone to gas stations and banks based on an apparent misunderstanding of his accountability contracts; missed an adjunct mental health session in August 2024 without a clear reason; and arrived two hours early to a group therapy session instead of accommodating his probation officer's home visit request. Ultimately, the discharge summary concluded that "Mr. Martinez struggles to consistently comply with . . . directives and provisions of his treatment contract, raising concerns related to his motivation to engage in sex offense-specific treatment." R. II at 27.

future business from the probation office, (b) "explored inconsistencies underlying the discharge summary," or (c) "undermined the treatment providers' subjective assessments of [his] purported mental state" during treatment sessions. Aplt. Reply Br. at 21. All of this, however, is pure speculation on Mr. Martinez's part, and he offers nothing concrete that would cause us to seriously question the reliability of the discharge summary or to conclude the *Jones* balancing test would have weighed in favor of requiring the attendance of any or all of his treatment providers at the revocation hearing. Moreover, Mr. Martinez made no attempt to revise and narrow his witness request, nor did he seek to postpone the revocation hearing so that his primary therapist, who authored the discharge summary, could attend and testify.

Lastly, Mr. Martinez argues the government cannot meets its burden of proving the district court would have imposed the exact same sentence absent the error. We disagree. Notably, the district judge who presided over the revocation hearing was the same judge who presided over Mr. Martinez's two prior revocation hearings. At the third and most recent revocation hearing, the judge noted on the record that at the second revocation hearing, he "very clearly advised" Mr. Martinez "that if he were to appear before me for a third final revocation hearing, that it was a certainty that the third term of incarceration he would receive would be

12

meaningfully longer" than the ten-month term of imprisonment imposed during the second revocation hearing. R. III at 82–83. The judge then stated: "I'm not about to renege on that promise." *Id.* at 83. Given these statements, we are not persuaded the district court's failure to conduct the required *Jones* balancing test had any impact on the sentence it ultimately imposed on Mr. Martinez.

## III

We affirm the district court's judgment revoking Mr. Martinez's term of supervised release. Mr. Martinez's motion to expedite the case is denied as moot.

Entered for the Court

Richard E.N. Federico
Circuit Judge