# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3347

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Bushwa Farmer, | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: April 15, 2009
Filed: June 4, 2009

_____

Before MURPHY, BRIGHT, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

While on supervised release, Bushwa Farmer was accused of assault by his girlfriend. The district court[1] held a revocation hearing and then revoked Farmer's release and sentenced him to twelve months and one day imprisonment. He appeals, contending that the district court erred by finding he had committed assault and denied his rights to due process and confrontation by admitting unreliable hearsay evidence. We affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Around midnight on August 16, 2008, Shanta King went to a Kansas City, Missouri police station and reported that she had been assaulted in her house by her boyfriend Bushwa Farmer. King reported that Farmer had grabbed her arms, pushed her to the floor, and bit her on the back. Then he followed as she ran outside, poured gasoline on her, and threatened to ignite her with a lighter. When she ran back inside to her bedroom, Farmer followed again and poured bleach on her. L.R., King's fourteen year old son, was in the house at the time.

At the station, King talked to Officer Jonathan Best, who escorted her back to her house along with Officer Todd Templeton. Templeton inspected the residence while Best continued to interview King. The officers took photographs of King's injuries and retrieved three items of King's clothing and a gas can from the front yard. Officer Best wrote a report based on King's statements and his observations that King had bruises on her arms, that there was a bite mark on her back, and that her hair was wet and smelled like gasoline and bleach.

Two weeks later, Officer Templeton responded to reports of shots being fired at King's residence. Both Farmer and King were present when he arrived. When Templeton inquired about the August 16 incident, King told him that it had "all been taken care of" and was "just a misunderstanding." On September 3, Kansas City Detective John Mattivi called King to follow up on the August 16 report. She stated that no assault had occurred, that she had poured bleach and gasoline on herself, and that she had been suffering from depression at the time she falsely reported the incident.

Farmer was arrested on September 15, and a preliminary hearing was held before Magistrate Judge Robert E. Larsen to determine whether there was probable cause to believe that he had violated a condition of his release by committing "another federal, state, or local crime." 18 U.S.C. § 3583(d). At the preliminary hearing the government introduced reports by Farmer's probation officer and the Kansas City

police. Farmer's mother testified that King had written her a letter expressing remorse for having called the police. King's son L.R. testified that he saw King and Farmer struggling over a bottle of bleach in the bedroom after his mother had poured bleach over clothes that Farmer was attempting to pack in a plastic bag. According to L.R., King later took a gasoline can from the front porch and poured gasoline on Farmer's other clothes. When King tried to prevent Farmer from leaving the house, L.R. said he had himself grabbed his mother from behind and bit her on the back to try to calm her down. Farmer gave a similar account and testified that he never struck, choked, or bit King. On cross examination he admitted that two former girlfriends had protection orders against him and that he was arrested in December 2000 for choking another woman. Farmer also called King to the stand, but she invoked her Fifth Amendment right not to testify after counsel advised her that she could be prosecuted if she had made a false statement to the police.

On October 8, 2008, the district court held the final revocation hearing. The government submitted the August 16 police report, photographs of King's injuries, and the testimony of Officers Best and Templeton. Farmer submitted the transcript from the preliminary hearing and a September 23 affidavit by King. In it she stated that her August 16 report had been incorrect, that the bite mark on her back had been made by L.R., and that she made the false report because she had not been taking her medication for a bipolar disorder. King allowed the affidavit to be admitted despite the court's advice that it could present the same risks of perjury as oral testimony. Farmer also submitted the report of a psychiatrist who had recently diagnosed King with depression.

The district court found by a preponderance of the evidence that Farmer had committed assault and therefore violated a condition of his supervised release. See 18 U.S.C. § 3583(e). It concluded that King's memory of what occurred was more accurate on August 16 than on September 23, noting that it was not uncommon for women to recant accusations of assault "after the emotion and passion of an assault

-3-

is healed by the passage of time." The court also found that King's August 16 statement must have been believable or the police would not have pursued the case. Finally, the court found that the accusation was consistent with Farmer's pattern of domestic abuse.

We review for clear error the district court's factual findings that Farmer had violated the conditions of his release, and its decision to revoke supervised release is reviewed for abuse of discretion. United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003). Under the clear error standard, we reverse "only if we have a definite and firm conviction that the district court was mistaken." United States v. Bahena, 223 F.3d 797, 802 (8th Cir. 2000).

Farmer argues that the evidence that he did not assault King, including his own testimony, that of L.R., and King's September 23 affidavit, outweighed the government's contrary evidence. The district court was entitled to make its own credibility determinations concerning the testimony of Farmer and L.R., which were supported by Farmer's history of domestic abuse and Officer Best's observations of King when she made the August 16 report. It was also not error for the district court to assign greater credibility to King's initial report after considering the circumstances under which she withdrew her accusation and the fact that the police found her initial report sufficiently believable to arrest Farmer even after King told them that it had "all been taken care of."

Farmer argues that admitting the hearsay contents of the August 16 police report violated his due process and confrontation rights. The district court overruled his objection, noting that Farmer would be able to cross examine Officer Best, the report's author. Farmer also objected when Officer Best testified about what King told him on August 16. The government contends that the district court relied on Officer Best's testimony, not the report. The report was admitted into evidence, however, and Officer Best's testimony could not have established assault by Farmer without the context provided by King's out of court statements.

A revocation hearing is not a criminal trial.[2]  See United States v. Black Bear, 542 F.3d 249, 253 (8th Cir. 2008).  This follows because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependant on observance of" the conditions of supervised release.  Id. (internal quotation marks omitted).  Thus "[t]he standard for admitting hearsay in a revocation hearing is different than at [a] trial on the merits.  The federal rules of evidence do not apply, but [the] rules of criminal procedure afford a defendant the opportunity to question adverse witnesses at the hearing."  Id. at 255 (internal quotation marks omitted).

A probationer's right to confront witnesses at a revocation hearing can be limited if "the hearing officer specifically finds good cause for not allowing confrontation."  Morrissey v. Brewer, 408 U.S. 471, 489 (1972).  The federal rules grant probationers facing revocation of supervised release "an opportunity to question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."  Fed. R. Crim. P. 32.1(b)(2)(C).  To determine whether good cause exists for allowing evidence without confrontation, "the district court must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation."  United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986).  The government must show that "the burden of producing live testimony would be inordinate and offer[] in its place hearsay evidence that is demonstrably reliable."  Id. at 643.

We review Farmer's constitutional claim de novo and his claim under Rule 32.1(b)(2)(C) for abuse of discretion.  United States v. Martin, 382 F.3d 840, 844 (8th Cir. 2004).  Where the "underlying facts have been sufficiently developed," we may perform the Bell balancing test on review.  Id. at 845.  Since there is no dispute that King was unavailable to testify, we need only determine whether her out of court

---

[2]For this reason, Crawford v. Washington, 541 U.S. 36 (2004), which discussed the  confrontation right in criminal prosecutions, does not apply.

statement bears indicia of reliability. Farmer contends that the statement was unreliable because King later withdrew it under oath and stated that she made it as a result of mental illness. The district court found that King's August 16 statement was credible because it was made while the event was fresh in her memory and before she had opportunity to recant as not infrequently done by victims of domestic abuse. Its reasons for believing King's August 16 accusation were likewise reasons why her out of court statement was reliable.

Farmer also argues that the police did not collect evidence to corroborate certain aspects of King's August 16 statement. For example, the police did not identify the lighter that Farmer allegedly used to threaten King and did not interview neighbors who L.R. said had witnessed the events in the front yard. Not every detail of King's statement need be corroborated to establish the reliability of her claim of assault. Officer Best observed the bruises and bite mark on King's body on the night of August 16 and took photographs that were admitted into evidence. Consistent with her account of the assault, King's hair was wet, she smelled of bleach and gasoline, and the police recovered a gas can from her front yard. These corroborating facts sufficiently establish the reliability of her out of court statements contained in the August 16 police report and recounted by Officer Best in his testimony.

We conclude that the district court did not err by admitting the August 16 police report at Farmer's revocation hearing because King was unavailable as a witness and her accusations in the police report bore indicia of reliability. Under the circumstances using the report did not violate either Farmer's constitutional rights or his rights under the federal rules.

Accordingly, we affirm the judgment of the district court.

_____

-6-