# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2595

_____

United States of America

*Plaintiff - Appellee*

v.

Mandingo Simms

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: February 10, 2014
Filed: June 10, 2014

_____

Before LOKEN, BOWMAN, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

Mandingo Simms appeals the district court's[1] revocation of supervised release. He argues that the court violated his due process right to confront witnesses when it admitted hearsay evidence at the revocation hearing without engaging in the analysis

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

required by United States v. Bell, 785 F.2d 640, 642-43 (8th Cir. 1986), and later decisions.  See also Fed. R. Crim. P. 32.1(b)(2)(C).  We review this constitutional claim *de novo*.  See United States v. Farmer, 567 F.3d 343, 347 (8th Cir. 2009).  Concluding the Bell issue was not properly preserved in the district court, we affirm.

## I.

Simms began a five-year term of supervised release in September 2009 after serving a prison sentence for conspiring to distribute cocaine base.  In October 2010, he was convicted of misdemeanor third degree domestic battery in an Arkansas state court.  Jurisdiction over his supervised release was then transferred to the Western District of Arkansas.  On August 22, 2012, Simms's estranged wife, Nikki Simms, complained to Van Buren, Arkansas police that Simms had battered, sexually assaulted, and threatened to kill her for many hours the prior night.  Nikki Simms was referred to the Women's Crisis Intervention Center in Fort Smith, where her physical injuries were identified.  The next day, she applied for an ex parte Order of Protection against Simms, which the Crawford County Circuit Court issued after a September 19 hearing.  Criminal charges were filed in state court on September 10.

Based on this incident, U.S. Probation Officer Brent Young petitioned the district court for revocation of Simms's supervised release, charging him with violating the condition that he not commit another crime.  The Petition alleged that Van Buren police had charged Simms "with aggravated assault of a family or household member, terroristic threatening, domestic battery 3rd degree, and criminal mischief 1st degree."  The Petition gave a detailed summary of the incident as reported by Nikki in the police "incident report."  The Petition also "noted" the 2010 state court conviction, for which no action had been requested "due to the circumstances of the charge."

The court held a revocation hearing on July 11, 2013. The government's evidence consisted of testimony by Probation Officer Young and Van Buren Detective Randall Allen; the Transcript of Judgment for Simms's 2010 conviction; police incident reports relating to the 2010 and 2012 incidents; photos of Ms. Simms's injuries; photos of the broken bed frame where Nikki alleged Simms forcefully threw her during the sexual assault; photos of text messages Simms sent to Nikki on August 23, 2012, admitting that he made "a big mistake" and asking her to forgive him; and Arkansas State Crime Lab reports that Simms's DNA was present in material collected during a sexual assault exam of Nikki Simms shortly after the incident. During cross examination of Detective Allen, defense counsel introduced the ex parte Order of Protection and an August 22 Crisis Intervention Center report that included a lengthy hand-written narrative of the incident by Nikki Simms.

Despite the obvious issues raised by this array of evidence, only one hearsay or confrontation objection was made at the hearing. After the government introduced the 2010 Judgment without objection, Probation Officer Young was asked:

> Q. . . . What actually happened?
>
> A. According to the police report or the incident report, there was an altercation between Mr. Simms and Brenda McCullough, and the --
>
> [Defense Counsel]: Your honor . . . I'm going to object. It violates the confrontation clause for the probation officer to read in the report. I think that he can testify about the outcome, but as far as the reading in the facts and circumstances, I think [Simms] has an absolute right to confront the witness.
>
> THE COURT: Well, this is a supervised release issue. . . . The rules are a little different. . . . I'm going to overrule your objection with a continuing objection and exception to it, but I would point out, too, to the government and the witness, that I can read . . . .

-3-

Officer Young then briefly summarized the 2010 incident and then described the August 2012 incident giving rise to the petition to revoke supervised release. At the end of direct examination, the court asked Officer Young:

> THE COURT: Was there a report issued in connection with the August 2012 incident?
>
> A. Yes, sir. There was a police report.
>
> THE COURT: And do you have it?
>
> A. I do. Yes, sir.
>
> THE COURT: Any objection to making that . . . Government's Exhibit No. 2 in this matter?
>
> [Defense Counsel]: Your Honor, the officer is here. If . . . the Court's inclined to conditionally admit that based on the officer's testimony . . . .
>
> THE COURT: I'm going to admit it. If he's here, he can affirm it, but it will be admitted with that understanding. . . .

Detective Allen, an author of the 2012 incident report, then testified. Allen recounted at length, without objection, what Nikki Simms told him immediately after the August 2012 incident, as well as his investigative conversations with Simms and his personal observations during the investigation. Defense counsel's extensive cross examination focused primarily on the question whether the sexual contact by Simms during this violent encounter with his wife was consensual. To that end, counsel introduced the Crisis Center Report, which included medical evidence consistent with consensual sex and also Nikki Simms's lengthy, handwritten narrative of the incident, which was consistent with Detective Allen's testimony of what she told him during his investigation.

Based on this evidence, the district court revoked Simms's supervised release. The court found that Simms had committed a violent Class A offense, whether or not he raped Nikki Simms. The court calculated a guidelines sentencing range of 24 to 30 months in prison, see U.S.S.G. §§ 7B1.1(a)(1), 7B1.4(a); varied upward; and imposed the statutory maximum 60 months, concurrent with any sentence imposed in the pending state court prosecution, with no further supervised release.

## II.

On appeal, Simms argues the district court violated his constitutional right to confront adverse witnesses at a supervised release revocation hearing when it considered "police and other reports along with testimony regarding the hearsay contents of those documents." The "full panoply of rights due a defendant in [a criminal prosecution]" do not apply in revocation proceedings, but a defendant contesting revocation is entitled to "the minimum requirements of due process," including "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Morrissey v. Brewer, 408 U.S. 471, 480, 489 (1972). Thus, as the district court recognized, "[t]he standard for admitting hearsay in a revocation hearing is different than at [a] trial on the merits." Farmer, 567 F.3d at 347 (quotation omitted).

Because the rules of evidence regarding hearsay are complex and do not strictly apply in revocation proceedings, Simms's overly-broad contention requires that we separately consider each item of evidence that raises a hearsay issue. We begin with the only item to which specific objection was made, the police report relating to Simms's 2010 battery conviction. Early in the revocation hearing, defense counsel objected that "it violates the confrontation clause for the parole officer [Brent Young] to read in the report." This was an ambiguous objection. As stated, counsel merely objected to Young reading into the record a report that he did not author when he had no first-hand knowledge of the underlying facts. But counsel may have intended to

also object to admission of a report containing hearsay statements by the victim of Simms's 2010 offense. The distinction is clearly significant. See United States v. Johnson, 710 F.3d 784, 789 (8th Cir. 2013), where the revocation sentence was vacated because the government offered no evidence other than a police report; we distinguished our affirmance in Farmer, where the authors of the police report were subject to cross examination, 567 F.3d at 346-47. Here, the district court was too quick to admit the 2010 report without evidence of its reliability. See Bell, 785 F.2d at 643-44; United States v. Lloyd, 566 F.3d 341, 346 (3d Cir. 2009). But this error was clearly harmless, both because the battery conviction was admitted into evidence, and because the court stated that its 60-month sentence was based "especially" on the violent 2012 incident.

The next item of evidence was the 2012 police report. During his direct examination, Probation Officer Young described this report as containing the facts that prompted him to file revocation charges. No impermissible hearsay in that. When the court asked if there was any objection to admitting the report into evidence, defense counsel noted that its author was present so the court could "conditionally admit that based on the officer's testimony." The court immediately admitted the report unconditionally, again perhaps too quickly. But the contents of the report were quickly overshadowed by Detective Allen's direct testimony, photos evidencing Simms's violent assault, and the Crisis Intervention Center report.

That brings us to the crux of Simms's appeal, Allen's lengthy testimony as to what Nikki Simms told him the day after the 2012 incident. Simms did not object to this testimony, which was consistent with Nikki's hand-written narrative of the incident in the Crisis Center report, a document offered into evidence *by Simms* during cross examination of Detective Allen. This is the type of victim hearsay at issue in United States v. Black Bear, 542 F.3d 249, 252 (8th Cir. 2008). It is obviously highly relevant to the revocation charges and may greatly affect the revocation sentence imposed if one or more violations are found. Thus, when timely

objection is made, as it was in <u>Bell</u>, <u>see</u> 785 F.2d at 643 n.3, the district court must assess "the explanation the government offers of why confrontation is undesirable or impractical" and "the reliability of the evidence which the government offers in place of live testimony" before deciding whether "the probationer is entitled to confrontation." <u>Id.</u> at 643; <u>see</u> <u>United States v. Martin</u>, 371 F.3d 446, 448-49 (8th Cir.), <u>cert. denied</u>, 543 U.S. 1004 (2004).

Simms argues that the revocation judgment must be vacated because the government offered no explanation why Nikki Simms was not present to give live testimony, and the district court failed to conduct the analysis required by <u>Bell</u>, <u>Black Bear</u>, <u>Johnson</u>, and other cases. But defense counsel never objected to the admission of Nikki's out-of-court statements, unlike the defendant in <u>United States v. Reynolds</u>, who objected to admission of victims' out-of-court complaints of sexual assault. 49 F.3d 423, 425 (8th Cir. 1995).

There are likely explanations for Simms's failure to object. First, many cases have held that there is good cause for not producing a declarant "when a defendant has a history of violent conduct that makes reprisal . . . a possibility." <u>United States v. Carthen</u>, 681 F.3d 94, 101 (2d Cir. 2012) (quotation omitted), <u>cert. denied</u>, 133 S. Ct. 837 (2013). Here, Nikki Simms told police she was frightened of Simms after the 2012 incident, and a state court promptly entered a five-year protective order at her request. Second, given the substantial non-hearsay evidence that Simms was guilty of a violent assault, defense counsel's emphasis at the hearing was to avoid a finding of non-consensual sex (which was avoided); Nikki Simms, if present, would undoubtedly testify she was raped during the 2012 incident, whereas Simms argued her out-of-court statements were unclear on this issue, and the Crisis Center report included medical evidence consistent with Simms's claim of consensual sex.

In these circumstances, the government was not obligated to explain the absence of Nikki Simms until the issue was raised, and the district court was not

obligated to apply the Bell balancing test, *sua sponte*, in the absence of a hearsay or confrontation objection requiring that analysis.[2] Moreover, on this record, had Simms made a timely objection to Nikki's out-of-court statements, and the district court failed to conduct a Bell analysis, we would perform the analysis ourselves and conclude there was good cause not to produce her as a live witness, as we did in Farmer, 567 F.3d at 347-48, and in United States v. Martin, 382 F.3d 840, 846 (8th Cir. 2004). We also conclude that substantial non-hearsay evidence of a violent assault, including Simms's admissions in his text messages to Nikki Simms after the incident, supported the court's decision to revoke supervised release and impose a 60-month sentence. Thus, any error in failing to conduct the Bell balancing analysis was harmless, as in Black Bear, 542 F.3d at 255-56.

Simms argues that the court's offer of "a continuing objection" when it ruled on his objection to the 2010 police report preserved all conceivable confrontation objections to any hearsay evidence offered at any subsequent point in the hearing. This contention is without merit. "A party may not rely on a continuing objection lodged on one evidentiary ground to argue a different ground for exclusion on appeal." United States v. McVeigh, 153 F.3d 1166, 1201 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999); see United States v. Davis, 534 F.3d 903, 914-15 (8th Cir. 2008), cert. denied, 555 U.S. 1201 (2009). An objection that a non-author may not read a police report into evidence did not preserve the question whether Simms had a due process right to confront his victim, Nikki Simms. "Preserving an issue is a matter of . . . clearly stating the grounds for the objection, so that the trial court has an opportunity to prevent or correct the error in the first instance." United States v.

---

[2]This is not a case like Johnson, 710 F.3d at 786, where the government was unprepared to present a properly-supported case for revocation of supervised release. Given the substantial evidence brought to the hearing and introduced, it is proper to assume the government was prepared to respond to a hearsay or confrontation objection made to the out-of-court statements by Nikki Simms, either by providing good cause for her absence, or producing her if the court required live testimony.

Williams, 994 F.2d 1287, 1294 (8th Cir. 1993). As Simms gave the district court no opportunity to address the Bell issue regarding Nikki Simms, there was no plain error.

The judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

I respectfully dissent. I depart from the majority only to the extent the majority concludes the district court's admission of Probation Officer Young's testimony regarding 2010 battery conviction was harmless. I do not believe we can conclusively hold the admission harmless based on this record.

The majority deems the admission harmless, citing the admission of the transcript of judgment evidencing the 2010 battery conviction, and the district court's statement the 60-month sentence was based "especially" on the violent 2012 incident.

Probation Officer Young's testimony regarding the events leading up to the battery conviction, however, went beyond the contents of the transcript of judgment, which solely concerned the fact of the conviction. Probation Officer Young improperly testified to the violent character of Simms's actions during those events.

It is to be noted here that the district court's revocation and sentence had two aspects. It found the fact of Simms's 2010 battery conviction as one of the grounds to conclude Simms had committed a Class A violation of his probation. The district court then, based on the violent nature of Simms's 2010 and 2012 actions, departed and varied upward from the Guidelines range associated with a Class A violation.

It is possible the district court based the sentence solely on the violence of the 2012 events. However, I do not discount the possibility that a portion of the sentence was based on the testimony Simms had engaged in other violent violations of his

parole.  Accordingly, because I believe we cannot definitively hold the admission of Probation Officer Young's testimony about the events leading to the 2010 conviction as being harmless, I would vacate the revocation and remand the case to the district court for a new revocation hearing.

For the foregoing reason, I respectfully dissent.

_____