**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARCO DEWON MURPHY,

    Defendant - Appellant.

No. 18-5052
(D.C. No. 4:06-CR-00159-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
_____

Following a revocation hearing, the district court found that Marco Dewon

Murphy had violated the conditions of his supervised release.  It sentenced him to

concurrent prison terms of 24 and 30 months.  On appeal, he contends the court erred

in admitting hearsay statements during the hearing.  But because neither Mr. Murphy

nor the court adequately preserved his hearsay objection, and because he fails to

demonstrate, under plain error review, that any error affected his substantial rights,

we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

# I. BACKGROUND

We start with legal rules applicable to Mr. Murphy's revocation hearing and then turn to the procedural history of this case.

## A. *Legal Background*

### 1. *Morrissey v. Brewer*

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court stated, "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id.* at 480. Rather, a parolee is entitled to "the minimum requirements of due process," including "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* at 488-89. The *Morrissey* protections have been extended to revocation of probation, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), and revocation of supervised release, *United States v. Jones*, 818 F.3d 1091, 1098 (10th Cir. 2016).

Because the Sixth Amendment does not apply to revocation hearings, *see Jones*, 818 F.3d at 1102, the confrontation right in a revocation hearing is a Fifth Amendment due process protection, *United States v. Perez*, 526 F.3d 543, 548 (9th Cir. 2008). The confrontation right *Morrissey* established is "flexible at revocation hearings." *Jones*, 818 F.3d at 1098. In *Gagnon*, the Supreme Court said, "While in some cases there is simply no adequate alternative to live testimony, we emphasize that

2

we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence."  411 U.S. at 782 n.5.  Accordingly, the confrontation right in a revocation hearing is not as strong as the Sixth Amendment right described in cases such as *Crawford v. Washington*, 541 U.S. 36 (2004).  *See Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010).[1]

2.  **Federal Rule of Criminal Procedure 32.1**

Federal Rule of Criminal Procedure 32.1(b)(2)(C) stems from *Morrissey* and provides that a person subject to a revocation hearing "is entitled to . . . an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." *See United States v. Taveras*, 380 F.3d 532, 536 (1st Cir. 2004) (explaining that the Rule's protections "were designed to track the due process rights established for parolees in *Morrissey v. Brewer*.").  The advisory committee notes to the Rule's 2002 amendment "direct courts to apply a balancing test when considering a releasee's confrontation rights at a revocation hearing under Rule 32.1(b)(2)(C): 'The court is to balance [(1)] the person's interest in the constitutionally guaranteed right to confrontation against [(2)] the government's good cause for denying it.'"  *Jones*, 818

---

[1] "[W]hile hearsay may be received in revocation proceedings more readily than at a criminal trial, the *Gagnon* and *Morrissey* cases recognize that the probationer does have some rights of confrontation and cross examination."  6 Wayne R. LaFave et al., Criminal Procedure § 26.10(c) (4th ed. 2018).

F.3d at 1099 (quoting Fed. R. Crim. P. 32.1 advisory committee's note to 2002 amendment).

3. *United States v. Jones*

In *United States v. Jones*, 818 F.3d 1091 (10th Cir. 2016), this court held that "the Rule 32.1(b)(2)(C) balancing test governs whether hearsay evidence may be used to revoke supervised release." *Id.* at 1098. We said the "reliability" of the hearsay statements and the defendant's "interest in cross-examination" are relevant to the defendant's interest in confrontation. *Id.* at 1100-01.[2] The district court should weigh these considerations against "the Government's explanation for failing to present" a witness. *Id.* at 1101.

4. **Burden of Proof and Evidence Rules**

Two other features of revocation hearings are relevant to this appeal. First, "[t]he district court must find by a preponderance of the evidence that the defendant violated a condition of his supervised release." *United States v. Disney*, 253 F.3d 1211, 1213 (10th Cir. 2001) (quotations omitted); *see also* 18 U.S.C. § 3583(e)(3).

---

[2] We explained in *Jones* that "[e]xamples of evidence possessing recognized indicia of reliability include: (1) the conventional substitutes for live testimony (e.g., affidavits, depositions, and documentary evidence), (2) statements falling under an established exception to the hearsay rule, (3) statements corroborated by detailed police investigative reports, and (4) statements corroborated by the releasee's own statements." 818 F.3d at 1098 n.4 (quotations omitted). We also said, "Corroborating evidence is often key to determining whether a statement is sufficiently reliable." *Id.* (quotations omitted).

The government must meet this burden. *United States v. Whalen*, 82 F.3d 528, 531-32 (1st Cir. 1996).

Second, the Federal Rules of Evidence—"except for those on privilege"—do not apply to proceedings "granting or revoking probation or supervised release." Fed. R. Evid. 1101(d)(3); *see also United States v. Henry*, 852 F.3d 1204, 1206 (10th Cir. 2017); *Curtis*, 626 F.3d at 544. Further, "neither Rule 32.1(b)(2)(C) nor the *Jones* decision interpreting it applies to the admission of hearsay statements from witnesses who are available for cross-examination." *Henry*, 852 F.3d at 1207. The Rule "speaks only to whether an adverse witness is 'require[d] . . . to appear' so that defendants might have the 'opportunity to . . . question' [him or] her." *Id.* (quoting Fed. R. Crim. P. 32.1(b)(2)(C)). Courts nonetheless frequently refer to "hearsay" when discussing Rule 32.1(b)(2)(C)'s confrontation right. *See, e.g.*, *Jones*, 818 F.3d at 1098 (holding "the Rule 32.1(b)(2)(C) balancing test governs whether hearsay evidence may be used to revoke supervised release"); *United States v. Simms*, 757 F.3d 728, 733 (8th Cir. 2014) (holding a court is not required to apply the Rule 32.1(b)(2)(C) balancing test in the absence of either a hearsay or confrontation objection); *Perez*, 526 F.3d at 548 (referring to both hearsay and confrontation).

## B. *Procedural Background*

### 1. **Mr. Murphy's 2007 Sentence**

In 2007, Mr. Murphy was convicted of possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and possessing a

5

firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I). He was sentenced to 93 months in prison on the drug count and 60 months on the firearm count, to run consecutively, followed by a single five-year term of supervised release. One of Mr. Murphy's supervised release conditions was that he "not commit another federal, state[,] or local crime." ROA, Vol. I at 23.

In 2015, the district court granted a joint motion to reduce Mr. Murphy's prison sentence to time served.[3] He was released from prison to begin his five-year term of supervised release.

## 2. Revocation of Supervised Release

In 2018, the U.S. Probation Office sought revocation of Mr. Murphy's supervised release. It alleged that Mr. Murphy had been arrested for "the offense[s] of Trafficking Cocaine and Possession of Firearm After Former Conviction of Felony," thereby violating the condition that Mr. Murphy "not commit another federal, state, or local crime." *Id.* at 31.[4]

The district court held an evidentiary hearing to determine whether Mr. Murphy's supervised release should be revoked because he committed another crime. At the end of the hearing, it found "that Mr. Murphy did commit another federal or

---

[3] Before 2015, Mr. Murphy's sentence was reduced twice to account for retroactive amendments to the United States Sentencing Guidelines, resulting in consecutive 60-month terms on each count.

[4] The Government limited its evidence at the revocation hearing to the trafficking offense.

state crime" and "violated the mandatory conditions of his supervised release." ROA, Vol. II at 60-61. Three weeks later, at a sentencing hearing, the court revoked Mr. Murphy's supervised release and imposed sentences of 24 months as to the first count and 30 months as to the third count of his 2007 indictment and conviction, to run concurrently.

The Government's only witness at the revocation hearing was Tulsa Police Department Officer Ron Leatherman. Mr. Murphy called no witnesses. We describe (a) Officer Leatherman's testimony, (b) portions of his testimony that are not clearly based on his personal knowledge or on statements of others, (c) Mr. Murphy's objections at the revocation hearing to Officer Leatherman's testimony and the district court's rulings on them, and (d) the district court's Rule 32.1(b)(2)(C) ruling at the sentencing hearing.

a. *Summary of Officer Leatherman's testimony*

The following summarizes Officer Leatherman's testimony at the revocation hearing. The transcript shows that some portions of Officer Leatherman's testimony were based on personal knowledge and some on statements made to him by others. But there are yet other portions where it is unclear whether the basis for his testimony was personal knowledge or hearsay.

In mid-March 2018, a confidential informant ("CI") approached Officers Leatherman and Tim Wilson and reported that Mr. Murphy was selling cocaine in Tulsa. The CI had a phone number for Mr. Murphy and said he drove a gray Dodge

Charger. One of these officers confirmed that a gray Dodge Charger was registered to Mr. Murphy.[5]

The police arranged two controlled buys for the CI to purchase cocaine from Mr. Murphy. Before the CI went to meet Mr. Murphy, Officer Leatherman asked whether he had drugs and searched him to ensure that he did not. Mr. Murphy arrived at the first controlled buy in his Dodge Charger. The CI bought cocaine from Mr. Murphy, and the police collected and tested it.

After the first controlled buy, the police obtained a warrant to install a GPS tracking device on Mr. Murphy's car. The device revealed 45 short visits over 12 days to a residence on North Norfolk Avenue in Tulsa. Officer Leatherman surmised that the North Norfolk Avenue address was a stash location—a place where a drug dealer stores drugs away from his or her home.

The second controlled buy occurred later in March. The police met with the CI. Either the police or the CI called Mr. Murphy to arrange the buy. After the phone call, and according to police surveillance and the GPS tracker, Mr. Murphy traveled to the stash location and then to the controlled buy location. He sold cocaine to the CI. As with the first controlled buy, before the CI departed for the buy

---

[5] As explained below, the Government sought to introduce evidence that the police showed the confidential informant a photo of Mr. Murphy to confirm his identity. Mr. Murphy objected, and the court admitted the evidence only to show the steps of the police investigation.

location, Officer Leatherman asked whether he had drugs and searched him to confirm he did not.

On April 2, after the second controlled buy, the Tulsa police stopped Mr. Murphy based on an outstanding traffic warrant and arrested him. The police found two cell phones and a set of keys on him.

After arresting Mr. Murphy, the police executed search warrants at the stash location and at his home. At the stash location, they found cocaine, guns, and evidence that crack cocaine was being manufactured. At Mr. Murphy's home, they found cash and cell phones.

From jail, Mr. Murphy called his wife and Deonte Mason, the person whose name was on paperwork found in the stash location. The jail recorded these calls.[6] One of these calls revealed that a key Mr. Murphy carried when he was arrested was to Mr. Mason's residence, the stash location where drugs were found. Perhaps to distance her spouse from drugs found at the stash location, Mr. Murphy's wife urged him to say he had Mr. Mason's key because Mr. Mason was going out of town.

---

[6] As explained below, Officer Leatherman testified to his recollection of the phone calls based on notes he took about the recordings. Mr. Murphy, through counsel, objected that the best evidence rule required admission of the recordings. The court overruled the objection.

b. *Uncertain Basis for Officer Leatherman's Testimony*

As mentioned above, the transcript of Officer Leatherman's testimony fails to show whether certain statements were based on his personal knowledge or on statements of others. We describe two examples that incriminated Mr. Murphy.

Officer Leatherman responded to the Government's questions about the first controlled buy:

> Q.    . . . Can you, officer, explain for the court . . . what happened after you met with the informant?
>
> A.    Me and Officer Wilson asked the informant if they were willing to do a controlled buy from Mr. Murphy. The informant agreed and steps were taken. We bought—the informant bought cocaine from Mr. Murphy, we collected it and turned it in, tested it.
>
> Q.    What did the test that you conducted, what were the results of that test?
>
> A.    That it was presumptively positive for cocaine.
>
> Q.    The controlled buy that you referenced, how did Mr. Murphy travel to that—how did he get there?
>
> A.    In his silver Dodge Charger.
>
> Q.    And did you run a search of the license tag associated with the silver Dodge Charger?
>
> A.    One was done. I don't remember if I did it or Officer Wilson did, but the vehicle checked to Mr. Murphy.

*Id.* at 24.

The transcript does not reveal how Officer Leatherman knew the informant bought cocaine from Mr. Murphy or how he knew Mr. Murphy arrived in the Dodge Charger. Did Officer Leatherman witness Mr. Murphy's arrival and the transaction, or did he repeat what the CI or another police officer told him? Also unclear is whether Officer Leatherman determined that the car was registered to Mr. Murphy or relied on Officer Wilson's statement that it was. This uncertainty resulted from the prosecutor's failure to inquire further to clarify and defense counsel's failure to object.

The basis for the following part of Officer Leatherman's testimony about the second controlled buy is similarly uncertain:

> Q.    . . . . With respect to Mr. Murphy, was there another—were there any other such controlled purchases in the course of your investigation with Mr. Murphy?
>
> A.    Yes.
>
> Q.    And can you explain that to the court?
>
> A.    That's the second controlled buy. At some point after the GPS tracking device had been affixed to his car, Officer Wilson and I met with the informant, did another controlled buy. Mr. Murphy was contacted. Officers were conducting surveillance on Mr. Murphy before the phone call was made.
> After the phone call was made, Mr. Murphy went to . . . Norfolk [Avenue] and then came and met the informant, and the controlled buy was done right after he had left the house on Norfolk. Cocaine was bought, it was tested, and, again, it was presumptive positive.

*Id.* at 35.

11

Officer Leatherman did not say how he knew that the transaction occurred or that Mr. Murphy was present. Although it is clear that Officer Leatherman met with the CI sometime before the buy, it is not clear whether he was present at or near the buy. Nor is it clear who called Mr. Murphy to arrange the buy. Did police officers dial the number so they could ensure it was Mr. Murphy's, or did the CI dial? Who bought the cocaine, and who tested it?

As the foregoing demonstrates, significant parts of Officer Leatherman's testimony that incriminated Mr. Murphy may have been based on personal knowledge or on knowledge he obtained from statements of the CI or other police officers—none of whom testified at the hearing. Neither the attorneys nor the court prompted Officer Leatherman to explain the basis of his knowledge.

c. *Mr. Murphy's limited objections and the court's rulings*

Mr. Murphy made only two objections relevant to hearsay or his confrontation right under Rule 32.1(b)(2)(C).

First, Mr. Murphy objected to Officer Leatherman's testimony that "a check was done in TRACIS, our police database, and a picture of Mr. Murphy was located and shown to the informant[,] and the informant identified the picture of Mr. Murphy as the person they knew." *Id.* at 22. Mr. Murphy, through counsel, objected, arguing this testimony was "[h]earsay as to the identification by the confidential informant of my client from apparently a photograph." *Id.* The court overruled the objection, accepting the testimony "simply for the purpose of showing that [Officer

12

Leatherman] went through the step as opposed to the truth of the matter asserted."

*Id.*

Second, Mr. Murphy's counsel objected to Officer Leatherman's testimony about the recorded phone calls from the jail, arguing that this testimony violated the best evidence rule. He explained:

> I understand that certain evidence can be heard at a revocation hearing under [Rule] 32.1. [Rule] 32.1 furthermore says that there needs to be a balancing test applied by the court.
>
> If the court's asking me, do I think that the court—if the court is asking me if I'd rather have the tape before the court than the testimony of the officer, then my answer is yes because I argue that it's the best evidence.
>
> At [Rule] 32.1., Judge—and I don't mean to interrupt—it talks about—and I'm sorry—in (b)(2)(C), questioning any adverse witness unless the court determines that the interest of justice does not require the witness to appear.

*Id.* at 32. The district court responded, "Well, that doesn't exactly fit the circumstances here; correct?" *Id.*

Mr. Murphy's counsel then referred the court to *Jones*:

> Judge, I'd say—there's a case that's called *Jones.* It is more in dealing with the hearsay purpose—or the hearsay issue when it comes to the revocation hearing. However, it does talk about the court's obligation to conduct a weighing test—a balancing test actually—as to whether the court ought to hear the testimony. It's *United States v. Jones*, 818 F.3d 1091. It only goes to hearsay, sir, it really does, but I just ask the court to consider the balancing aspect of it.

13

*Id.* at 32-33. The court overruled the objection and "allow[ed] this hearsay evidence as to the contents of the jail calls." *Id.* at 33. It nonetheless ordered the Government to provide recordings of the phone calls to Mr. Murphy's counsel.

### d. *Sentencing hearing*

At the sentencing hearing approximately three weeks later, the district court revisited *Jones*. Unprompted by the parties, the court stated:

> At [the revocation] hearing, the government presented hearsay statements of a confidential informant and non[-]testifying officers through Tulsa police officer Ron Leatherman.
>
> The court applied the balancing test to weigh the strength and reliability of the evidence presented by the testifying officer who was involved in all facets of the investigation and arrest of the defendant against the benefit to the defendant of the production of additional officers involved and the exposure of the confidential informant for cross-examination. The court cites *United States v. Jones*, 818 F.3d 1091 (10th Cir. 2016).
>
> The court finds and concludes that the interest of justice did not require the disclosure of the identity of the confidential informant, as the government's interest in protecting the identity of the confidential informant outweighed the defendant's interest in confrontation. The reliability of the testifying officer provided good cause to negate the requirement of additional officers or the confidential informant to appear for questioning by counsel for the defendant in accordance with Federal Rule of Criminal Procedure 32.1(b)(2)(C).

*Id.* at 70. Neither the defense counsel nor the prosecutor made any statement in response to the court's comment or ruling. The court sentenced Mr. Murphy for his supervised release violations.

## II. **DISCUSSION**

The following explains that (A) neither Mr. Murphy nor the district court preserved the Rule 32.1(b)(2)(C) issue for appeal, (B) Mr. Murphy must therefore show the elements of plain error to prevail on appeal, and (C) he fails to do so because he cannot carry his burden to show that any error affected his substantial rights.

### A. *Preservation*

We consider whether the Rule 32.1(b)(2)(C) issue was preserved either because (1) Mr. Murphy called the district court's attention to it or (2) the court sua sponte adequately addressed it. We conclude the issue was not preserved.

### 1. **Mr. Murphy's Failure to Object**

#### a. *Additional legal background*

"If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue. If he fails to do so in a timely manner, his claim for relief from the error is forfeited." *Puckett v. United States*, 556 U.S. 129, 134 (2009). "In federal criminal cases, Rule 51(b) tells parties how to preserve claims of error: 'by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to

take, or the party's objection to the court's action and the grounds for that objection.'" *Id.* at 135.[7]

    b. *Mr. Murphy's failure to preserve a general hearsay objection*

Mr. Murphy's two objections, described above, were inadequate to preserve the Rule 32.1(b)(2)(C) issue as to all of the CI's and non-testifying officers' hearsay statements that Officer Leatherman may have relied upon for his testimony.

The first objection alleged that Officer Leatherman's testimony about the CI's identifying Mr. Murphy from a photograph was hearsay. The district court admitted the testimony only for the non-hearsay purpose of showing a step in the undercover operation. Mr. Murphy did not object to admission on this ground, nor does he contest it on appeal. More pertinent to this appeal, the objection failed to put the court on notice that Mr. Murphy objected to all of Officer Leatherman's testimony that may have been based on the CI's or the non-testifying officers' statements.

_____

[7] Federal Rule of Criminal Procedure 51(b) states:

> A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought— of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection. If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party. A ruling or order that admits or excludes evidence is governed by Federal Rule of Evidence 103.

The second objection was to Officer Leatherman's testimony about Mr. Murphy's jail phone calls. Counsel initially objected based on the best evidence rule.[8] A hearsay or confrontation objection would have been inapt to the extent Officer Leatherman's testimony concerned Mr. Murphy's non-hearsay party admissions. His counsel eventually mentioned Rule 32.1(b)(2)(C) and *Jones*.

Mr. Murphy's citation to this authority could have put the district court on notice of the confrontation issue as to statements made by Mr. Murphy's spouse and Mr. Mason in the jail phone calls. In overruling the objection, the court ordered the Government to provide Mr. Murphy's counsel with recordings of the phone calls "to verify the statements." *Id.* at 33. The court's ruling was limited to the contents of these calls, and the objection did not alert the court to a hearsay objection to other testimony.

Even if Mr. Murphy's objection to the phone calls was preserved in the district court on confrontation grounds, the contents of the jail phone calls are not at stake in this appeal. Mr. Murphy confines his argument on appeal to the statements of the CI and non-testifying officers.[9] He fails to seek review of the district court's ruling on

---

[8] "The best evidence rule, set forth in Federal Rule of Evidence 1002, holds that '[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.'" *United States v. Phillips*, 543 F.3d 1197, 1203-04 (10th Cir. 2008).

[9] In his brief, Mr. Murphy states the issue as: "Whether the district court's reliance on hearsay statements from a *confidential informant* and *non-testifying police officers* to conclude that Mr. Murphy sold cocaine to the informant in

17

his best evidence rule objection or the court's failure to conduct a Rule 32.1(b)(2)(C) balancing test with respect to statements by Mr. Murphy's wife or Mr. Mason. Accordingly, he has waived any argument that the district court should not have considered statements made in the jail phone calls. *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("We routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." (quotations and brackets omitted)).

2. **The District Court's Ruling at Sentencing Failed to Preserve the Rule 32.1(b)(2)(C) Issue**

Mr. Murphy argues that the district court's discussion of Rule 32.1(b)(2)(C) at the sentencing hearing preserved for appeal the issue of whether the court's application of the balancing test to admit Officer Leatherman's hearsay testimony was reversible error.

a. *Additional legal background*

In *United States v. Hernandez-Rodriguez*, 352 F.3d 1325 (10th Cir. 2003), we said that "when the district court sua sponte raises and explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal even if he failed to raise the issue in district court." *Id.* at 1328. In this circumstance, "review on

---

controlled buys . . . was reversible error . . . ." Aplt. Br. at 1-2 (emphasis added). Because Mr. Murphy does not contend that the district court erred in considering the statements in the phone calls, we need not address whether they should have been excluded under the best evidence rule or Rule 32.1(b)(2)(C).

18

appeal is not for 'plain error,' but is subject to the same standard of appellate review that would be applicable if the appellant had properly raised the issue." *Id.* We explained that a district court's sua sponte resolution of a legal issue may satisfy the two reasons that contemporaneous objections are required for preservation. Those reasons are:

> (1) "to give [the district] court—which often is in the best position to evaluate a legal issue in light of its factual context, and to develop the factual record necessary to resolve it—an opportunity to address the issue in the first instance, and to avoid errors while they are still avoidable"; and

> (2) to "afford[] opposing counsel the opportunity to argue the point and, perhaps more importantly, to offer relevant evidence."

*Id.* at 1329.

Other circuits apply a similar rule. *See, e.g.*, *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 n.8 (9th Cir. 2010) (Waiver "does not apply where the district court nevertheless addressed the merits of the issue not explicitly raised by the party." (quotations omitted)). Views vary about whether application of the rule is discretionary. The Sixth Circuit has stated, "[T]here can be no forfeiture where the district court nevertheless addressed the merits of the issue." *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) (quotations omitted). On the other hand, the D.C. Circuit has stated that application of the rule is "a matter of discretion." *Al Bahlul v. United States*, 767 F.3d 1, 48 (D.C. Cir. 2014).

19

b. *The district court did not preserve the Rule 32.1(b)(2)(C) issue*

We decline to apply the rule in *Hernandez-Rodriguez* because it does not fit this case. *Hernandez-Rodriguez* turned on the district court's opportunity to avoid error and the potential for the court or the objecting party to develop a record for appellate review. A contemporaneous objection helps develop the record when a witness gives live testimony, as in this case. For example:

> Suppose that evidence sought to be introduced consists of several statements or items tendered as a unit in a . . . trial transcript. Assume that the opponent objects to the whole of the evidence when some parts are subject to the objection made but other parts are not. In this situation, the judge does not err by overruling the objection. It is not the judge's responsibility to sever the bad parts if some are good. That is the opponent's burden.

1 George E. Dix et al., McCormick on Evidence § 52 (7th ed. June 2016 update). This is why the Federal Rules of Evidence require that an objection be "timely." Fed. R. Evid. 103(a)(1)(A); Fed. R. Evid. 103(a) advisory committee notes (requiring objections to "alert [the court] to the proper course of action and enable opposing counsel to take proper corrective measures").

In *Hernandez-Rodriguez*, the defendant objected to the validity of a warrant. Because the scope of the contested evidence was clear, a contemporaneous objection was not necessary to develop the record. Here, it is not clear how much of Officer Leatherman's testimony was based on hearsay statements. A contemporaneous objection would likely have prompted the Government to respond or the court to ask

20

for a response. The Government might have answered by developing the record, perhaps explaining whether Officer Leatherman's testimony was based on personal knowledge or hearsay. If the latter, it might have provided a factual basis for not calling the CI or the non-testifying officers. But Mr. Murphy did not object.

Instead, the district court addressed the Rule 32.1(b)(2)(C) and *Jones* balancing test at Mr. Murphy's sentencing hearing roughly three weeks after the revocation hearing. Rather than seeking a response from the Government as to whether portions of Officer Leatherman's testimony should be excluded under Rule 32.1(b)(2)(C), the court simply ruled in the Government's favor. At that point, the Government had no reason to develop the record further. The ruling also failed to indicate which of Officer Leatherman's statements it covered. For these reasons, the district court did not compensate for Mr. Murphy's failure to object.[10]

* * * *

Because Mr. Murphy's argument on appeal about denial of his confrontation right under Rule 32.1(b)(2)(C) was unpreserved, it is subject to review only for plain

---

[10] Another way to make this point is to assume that at the sentencing hearing, Mr. Murphy rather than the court had raised the Rule 32.1(b)(2)(C) issue, objecting to Officer Leatherman's testimony without being any more specific about the portions of testimony he was challenging than the court was. Had the court denied the objection as untimely and lacking specificity, we would most likely consider the objection forfeited and review for plain error. *See Macsenti v. Becker*, 237 F.3d 1223, 1233-34 (10th Cir. 2001) (reviewing ruling on *Daubert* objection made at the close of evidence for plain error). Under these circumstances, Mr. Murphy cannot rely on the district court's statements at the sentencing hearing to preserve his broad and unfocused evidentiary objection that he failed to make at the revocation hearing.

error.  *See United States v. Mulero-Díaz*, 812 F.3d 92, 96 (1st Cir. 2016) (When a

"Rule 32 challenge is at least forfeited . . . we review for plain error.").[11]

B.  *Plain Error Analysis*

1.  **Additional Legal Background on Plain Error**

Plain error review "involves four steps, or prongs":  (1) "there must be an error

or defect . . . that has not been . . . affirmatively waived[] by the appellant"; (2) "the

legal error must be clear or obvious"; (3) "the error must have affected the

appellant's substantial rights, which in the ordinary case means he must demonstrate

that it affected the outcome of the district court proceedings"; and (4) to warrant the

appellate court's discretion to remedy the error, the error must "seriously affect[] the

fairness, integrity[,] or public reputation of judicial proceedings."  *Puckett*, 556 U.S.

at 135 (quotations omitted); *see also United States v. Uscanga-Mora*, 562 F.3d 1289,

1295 (10th Cir. 2009).

"The third . . . limitation on appellate authority [to consider forfeited errors] is

that the plain error affect substantial rights."  *United States v. Olano*, 507 U.S. 725,

734 (1993) (quotations and brackets omitted).  "[I]n most cases," this means "that the

error must have been prejudicial:  It must have affected the outcome of the district

court proceedings."  *Id.*; *see United States v. Romero*, 491 F.3d 1173, 1179 (10th

---

[11] Because we affirm under plain error review, we do not consider the
Government's argument that Mr. Murphy waived, rather than forfeited, his
confrontation right.

22

Cir. 2007).  This inquiry differs from a harmless error analysis in that "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."  *Olano*, 507 U.S. at 734.  "Normally . . . the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong" of plain error review.  *Id.* at 735.

"[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it, and . . . that burden should not be too easy for defendants . . . ."  *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (addressing appeal of district court's failure to give a warning required by Federal Rule of Criminal Procedure 11).  This assignment of burden "encourage[s] timely objections and reduce[s] wasteful reversals by demanding strenuous exertion to get relief for unpreserved error."  *Id.*

2.  **Mr. Murphy Has Not Shown Prejudice**

Mr. Murphy failed to object to most of Officer Leatherman's testimony, and it is uncertain whether particular incriminating parts of that testimony were taken from statements of others.  Mr. Murphy must therefore show what portions of Officer Leatherman's testimony qualify for review under Rule 32.1(b)(2)(C).  Although he gives a few examples, Mr. Murphy also argues generally that the district court relied on hearsay.  We doubt Mr. Murphy has met his burden to show that the district court erred and that the error was plain.

23

We choose, however, to decide this appeal on the third step of plain error review—that Mr. Murphy has failed to demonstrate that any error in the district court's Rule 32.1(b)(2)(C) decision affected his substantial rights. We therefore assume without deciding that Mr. Murphy has satisfied the first two steps of plain error review—that (1) the district court erred in admitting Officer Leatherman's testimony that was based on statements of the non-testifying CI and the other officers, and (2) the error was plain under Rule 32.1(b)(2)(C) and *Jones*. We nonetheless affirm because Mr. Murphy has failed to show that any error in the district court's Rule 32.1(b)(2)(C) ruling affected his substantial rights.

To show prejudice, Mr. Murphy must convince us, after excluding the hearsay evidence, that the remaining evidence would not establish that he violated his supervised release by selling drugs. His burden includes showing what portions of Officer Leatherman's testimony were hearsay. If he cannot show that any particular portion of Officer Leatherman's testimony was based on hearsay, then we properly consider that testimony as part of the remaining evidence.

Mr. Murphy contends that the district court should have excluded (1) the CI's statements (a) identifying him as the person selling drugs and (b) about the controlled buys, Aplt. Br. at 19, 26-28; and (2) "evidence that non-testifying officers saw or determined that Mr. Murphy went to the Norfolk address" before the second controlled buy, *id.* at 28. He contends that without this evidence, the "finding that Mr. Murphy had access—had a key—to the residence in which drugs were found"

24

fails to establish that he violated his supervised release condition by a preponderance of the evidence.  *Id.*  We are not persuaded.

Officer Leatherman testified to non-hearsay evidence about (a) the circumstances of the first controlled buy, (b) Mr. Murphy's connection to the stash location, and (c) the circumstances of the second controlled buy.[12]  Taken together, this evidence permitted the court, apart from hearsay evidence, to find that he violated the terms of his supervised release by selling drugs.

a.  *The first controlled buy*

Officer Leatherman testified that the CI "bought cocaine from Mr. Murphy" at the first controlled buy.  ROA, Vol. II at 24.  Mr. Murphy contends this is a hearsay statement "inasmuch as the officer did not indicate that police witnessed either buy (which usually does not happen with controlled buys)."  Aplt. Br. at 19.  But Officer Leatherman did not explain the basis for his knowledge.

Mr. Murphy's argument would place on the Government the burden of showing that Officer Leatherman witnessed the buy and therefore spoke from personal knowledge.  But on plain error review, Mr. Murphy bears the burden of showing the opposite—that Officer Leatherman did not witness the controlled buy, rendering his testimony hearsay.  He has not done so.  On cross-examination, Officer

---

[12] Because we find enough evidence in the hearing transcript to affirm, we need not address the Government's argument that the court could consider police reports and other documents attached to the Petition for Warrant for Offender Under Supervision.  *See* Oral Arg. at 19:12-19:23; 21:11-21:50; 27:20-27:55; 28:11-28:45.

Leatherman testified only that there were no photos or recordings of the controlled buy, not that he did not see it. Mr. Murphy points to no record evidence to show that Officer Leatherman's statement was not based on personal knowledge.[13]

Even if Officer Leatherman did not see the transaction, the circumstantial evidence shows that Mr. Murphy sold drugs to the CI. Officer Leatherman testified that Mr. Murphy arrived at the controlled buy location in his Dodge Charger. Officer Leatherman's testimony did not reveal his basis of knowledge.[14] But Mr. Murphy does not argue, much less show, that this was a hearsay statement.

Officer Leatherman also testified that he searched the CI before the controlled buy to ensure he did not have drugs. After the CI returned from the controlled buy location, Officers Leatherman and Wilson "collected" cocaine from him. ROA, Vol. II at 24.

The non-hearsay evidence shows that (1) Mr. Murphy arrived at the first controlled buy location, (2) the CI went to the location without drugs, and (3) the CI

---

[13] Mr. Murphy states it "is to be expected in a controlled buy" that no police officer witnesses the transaction, Aplt. Br. at 27, but he points to no record evidence to support this assertion.

[14] Officer Leatherman responded to the Government's questions:
> Q.    The controlled buy that you referenced, how did Mr. Murphy travel to that—how did he get there?
> A.    In his silver Dodge Charger.

ROA, Vol. II at 24.

returned with drugs.  Mr. Murphy points to no evidence to support an innocent explanation for these circumstances.

b. *The stash location*

The presence of drugs at the stash location, Mr. Murphy's possession of keys to the location, and his frequent short visits there, including the visit immediately before the second controlled buy, supported the district court's finding that Mr. Murphy sold drugs.

Mr. Murphy's brief states that "drugs found at the 'stash house' at the Norfolk address[,] which did not belong to Mr. Murphy, but which he had a key to and visited, cannot be linked to the tip that he was selling drugs."  Aplt. Br. at 26.  Mr. Murphy therefore does not dispute that the stash location contained drugs, he had keys to the property, or he visited it.  He contends only that the drugs were not his. And we need not rely only on Mr. Murphy's implicit concession that he visited and had keys to a location where drugs were found.  Officer Leatherman's testimony also supports that Mr. Murphy visited the stash location.

First, Officer Leatherman testified that the participants in the jail phone calls discussed the presence of guns and drugs at the stash location.  Mr. Murphy does not contest the admissibility of Officer Leatherman's testimony about the jail phone calls.

Second, non-hearsay evidence from the GPS tracking device shows that Mr. Murphy's car made 45 visits to the stash location in a 12-day period.  Officer

27

Leatherman testified that these visits were short. He based this testimony on a combination of his own monitoring of the GPS data and review of data provided to him after the investigation ended. Mr. Murphy does not contend that this testimony was based on hearsay.

Third, in the recorded calls from jail, Mr. Murphy and his wife talked about how often he visited the stash location.[15] And they hashed out an explanation for why Mr. Murphy had keys to the stash location—his wife suggested that Mr. Murphy say he had them because Mr. Mason was going out of town. As explained above, Mr. Murphy has waived any argument against the admissibility of Officer Leatherman's testimony on this point.

The court could consider this information in light of Officer Leatherman's explanation that a stash location is a place a drug dealer "use[s] to store [his or her] drugs so that . . . the drugs are not at that person's house all the time," *id.* at 21, and that a drug dealer's visits to a stash location would be brief, *id.* at 27. Mr. Murphy has not objected to this testimony in district court or on appeal.

c. *The second controlled buy*

Officer Leatherman testified that "Mr. Murphy was contacted" to arrange a second controlled buy and that "[a]fter the phone call was made," Mr. Murphy went to the stash location and then to the buy location. *Id.* at 35. Mr. Murphy has not

---

[15] Officer Leatherman could not recall what Mr. Murphy said about how often he visited.

28

shown this testimony was based on hearsay. The district court therefore could consider the phone call and Mr. Murphy's travel from the stash location to the CI shortly after receiving the call.

Mr. Murphy argues that the hearsay statements of non-testifying police officers provided Officer Leatherman's only basis for knowing Mr. Murphy traveled from the stash location to meet the CI. *See* Aplt. Br. at 28.[16] The record does not support this argument. In response to a question from the district court, Officer Leatherman explained that he knew Mr. Murphy traveled from the stash house "from what surveillance officers saw and what the tracker information was." ROA, Vol. II at 54. As explained above, the court could consider Officer Leatherman's statements based on data from the GPS tracking device. Accordingly, he had a non-hearsay basis to testify that Mr. Murphy's Dodge Charger moved from the stash location to the meeting point.

Although Officer Leatherman did not testify about where he was during the second controlled buy, he said that he searched the CI before each controlled buy. *See id.* at 42.[17] The court could infer that Officer Leatherman had personal

---

[16] Mr. Murphy argues that Officer Leatherman could place Mr. Murphy in the Dodge Charger only by relying on hearsay and contends that Mr. Mason could have been the driver "and was in fact the seller." Aplt. Br. at 28. We agree that Officer Leatherman had no non-hearsay basis to know that Mr. Murphy drove to the second controlled buy. But evidence that his car was involved is still relevant to a finding that Mr. Murphy sold drugs.

[17] Officer Leatherman responded to questions from Mr. Murphy's counsel:

knowledge of the location of the second controlled buy that he could correlate with information from the GPS tracking device. Officer Leatherman's testimony had a non-hearsay basis that the Dodge Charger traveled from the stash location to a meeting location shortly after police or the CI placed a phone call to arrange the second buy. Mr. Murphy has not shown otherwise.

* * * *

Taken together, the evidence about the first controlled buy, Mr. Murphy's connection to the stash location where cocaine was found, and his car's movements just before the second controlled buy, permitted the district court to find by a preponderance of the evidence that Mr. Murphy sold cocaine and violated a term of his supervised release. Mr. Murphy fails to carry his burden to show that his substantial rights were affected—that any error in admitting hearsay statements caused the district court to reach a result it would not otherwise have reached. Mr. Murphy's appeal fails at the third prong of plain error review.

---

Q.     . . . .
    Whenever the buy was supposed to go down, right, beforehand, your reports say that you searched the dude, that you asked him if he had any money or dope and he didn't and you gave him money and you sent him into the deal; right?
A.     Correct.
ROA, Vol. II at 42.

30

### III.  **CONCLUSION**

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge